Filed 8/1/14  P. v. Crawford CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E059026 |
| v. | (Super.Ct.No. FSB1300462) |
| SUNNY RAY CRAWFORD, | **OPINION** |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  R. Glenn Yabuno, Judge.  Affirmed as modified.

Gambale & Gambale and Jennifer A. Gambale, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, and Eric A. Swenson,

Lynne McGinnis, and Michael Pulos, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Sunny Ray Crawford confronted his then-ex-girlfriend outside her house. When she went inside the house, he climbed in through a window. Throughout this incident, he alternated between saying he loved her and wanted to get back together with her, on one hand, and threatening to beat her up, on the other hand.

After a jury trial, defendant was found guilty of making a criminal threat. (Pen. Code, § 422.) He was found not guilty of misdemeanor vandalism. (Pen. Code, § 594, subd. (b)(2)(A).) The jury hung on a charge of burglary (Pen. Code, § 459), and the trial court dismissed this charge on the People's motion. Defendant was placed on probation and ordered to pay the usual fees and fines.

In this appeal, defendant contends:

1. The trial court erred by failing to give a unanimity instruction with respect to the charge of making a criminal threat.

2. The trial erred by imposing an appointed counsel fee and a presentence investigation and report fee because there was insufficient evidence that defendant had the ability to pay.

3. The trial court erred by making the payment of fees a condition of probation.

The People concede that probation cannot be made conditional on the payment of fees. We agree. Otherwise, we find no prejudicial error. Hence, we will modify the judgment.

I

FACTUAL BACKGROUND

Defendant and Maribel Herrera were in a romantic relationship, off and on, for five years; for the last two of those years, Maribel lived with defendant and his mother.

In December 2012, Herrera moved out, so she could focus on finishing cosmetology school. She moved back into her family's house in Muscoy.

On February 3, 2013, around 4:00 p.m., defendant came to Herrera's house. He stood in the front yard, calling her name.

Herrera went outside, but she took some pepper spray with her. Defendant "was acting mad." He said he wanted her back. He accused her of moving out of his house because she was "seeing another man." He said, "I feel like kicking your ass." He also said he was going to choke her. Herrera testified that she was not afraid and "didn't feel like [defendant] was going to hurt [her] at any time during that conversation."

After about 10 minutes, Herrera did not want to talk anymore, so she went back inside. At this point, the front door was locked. Defendant kept calling her name. She hid in a closet. She testified that she hid because she did not want to talk to defendant, not because she was afraid.

Defendant came in through Herrera's bedroom window.[1] He went through the house looking for her. As Herrera described it, "He was saying I love you, where are

---

[1] There was some evidence that defendant had broken the same window a few days earlier, which was the basis of the misdemeanor vandalism charge.

3

you, let's talk. And he'll change up and be like where the fuck are you. And say when I find you I'm going to fuck you up. And then he'll be like I love you, I'm sorry, please come back." He also said, "[I'm] going to choke you and beat your ass up." At trial, Herrera testified that at this point, she was angry, but she still was not afraid.

Finally, defendant left the house (through the front door) and drove away. Meanwhile, Herrera's brother had called 911. When Herrera spoke to the police, she was crying and upset. She told them that "she was afraid for her life, and if [they] didn't arrest him[,] [defendant] would come back and carry out his threats."

By the time of trial, defendant and Herrera had gotten back together. Herrera dismissed her statement to the police as "over[-]dramatic" and "exaggerated."

II

FAILURE TO GIVE A UNANIMITY INSTRUCTION

Defendant contends that the trial court erred by failing to give a unanimity instruction with respect to the criminal threats charge.[2]

"In a criminal case, . . . the jury must agree unanimously the defendant is guilty of a *specific* crime. [Citation.] Therefore, cases have long held that when the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act. [Citations.]" (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.) "On the other hand, where the evidence

_____

[2] The trial court did give a unanimity instruction, but it was expressly limited to the misdemeanor vandalism charge.

4

shows only a single discrete crime but leaves room for disagreement as to exactly how that crime was committed or what the defendant's precise role was, the jury need not unanimously agree on the basis or, as the cases often put it, the 'theory' whereby the defendant is guilty.  [Citation.]"  (*Ibid.*)

The first thing we must decide, then, is whether the evidence shows two (or more) instances of the offense of making a criminal threat.  Ordinarily, we would look first to the words of the statute that defines the offense.

This offense is committed by "willfully threaten[ing] to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement . . . is to be taken as a threat . . . , which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety . . . ."

This language, however, is somewhat ambiguous with respect to what constitutes a single instance of the offense. Suppose, for example, the defendant texts the victim, every five minutes for an hour, "I'm going to kill you and I'm going to kill your daughter."  Do we count the number of separate threatening communications?  Or the number of crimes threatened?  Or the number of times the victim is placed in sustained fear?

We therefore turn to the case law on this issue. The leading case is *People v. Melhado* (1998) 60 Cal.App.4th 1529. There the defendant failed to pay for repairs on his car. (*Id*. at pp. 1532-1533.) The manager of the repair shop therefore put the defendant's car in storage. At 9:00 or 9:30 a.m., the defendant told the manager, "I'm going to blow you away if you don't bring my car back. I'm going home and I'm going to bring a grenade." (*Id*. at p. 1533.) After the defendant left, the manager called the police. At 11 a.m., the defendant returned. In the presence of the manager and two other employees, he pulled out a grenade and yelled, "I'm going to blow you away," "I'm going to blow up this place. If I don't get this car by Monday, then I'm going to blow it away." (*Ibid*.)

On appeal, the court held that the trial court erred by failing to give a unanimity instruction because the jury could have found two separate offenses of making a criminal threat. (*People v. Melhado*, *supra*, 60 Cal.App.4th at pp. 1534-1539.) It reasoned that, in the 9:00 a.m. incident, all of the elements of the crime were satisfied. (*Id*. at pp. 1536-1538.)

Significantly, in *Melhado*, the People were arguing that the 9:00 a.m. incident did not meet the statutory definition of the crime because one of the elements — i.e., that the threat was so unequivocal, unconditional, immediate and specific as to convey an immediate prospect of execution of the threat — was absent. (*People v. Melhado*, *supra*, 60 Cal.App.4th at pp. 1537-1538.) The court's discussion therefore responded to this contention.

The fact, however, that all the elements of a crime have been satisfied tells you when the crime has commenced; it does not necessarily tell you when the crime has ended. For example, a theft begins as soon as there has been a taking of personal property belonging to another, but "the theft continues until the perpetrator has reached a place of temporary safety with the property. [Citation.]" (*People v. Gomez* (2008) 43 Cal.4th 249, 254-255.) Implicitly but necessarily, *Melhado* concluded that the crime the defendant commenced at 9:00 a.m. had *ended* before he commenced a separate crime at 11:00 a.m.

The obvious basis for that conclusion in *Melhado* is that there, the defendant parted with the victim and thus was not making any threats for an hour and a half. Here, by contrast, defendant stayed with the victim and kept making threats. We also note that all of defendant's threats were of the same nature — to beat the victim up and to choke her. Moreover, while there is some room for doubt about when the victim first started to be afraid (of which more below), once she did, she remained in constant fear until defendant left. We see no way to carve up this course of conduct into distinct crimes.

Defendant claims that, when he first entered the house, he said he loved Herrera; it was only when he could not find her that he got frustrated and started to threaten her again. He points out that the jury hung on the burglary charge; he claims that at least one juror must have questioned whether he entered the house with the intent to threaten. He concludes that, because he lacked the intent to threaten Herrera when he first entered the

7

house, "the threats made outside the home were separate and distinct from the threats made inside the home."

The evidence, however, does not show any change of intent. When defendant was outside, he cajoled and threatened alternately, and when he was inside, he continued to cajole and threaten alternately. He pursued Herrera inside the house against her will; she had gone in and locked the door, which was why he had to climb in through a window. She had to hide in a closet in her own home to evade him. The fact that one juror may have been unconvinced that defendant entered the house with the intent to threaten does not change the evidence. (See *People v. Miranda* (2011) 192 Cal.App.4th 398, 405-406 [jury's "not true" finding on personal firearm use allegation does not mean there was insufficient evidence that defendant was shooter].) At most, for a few moments, defendant was hopeful that he could catch more flies with honey than with vinegar. But this does not mean he committed two separate offenses, any more than a kidnapper who unsuccessfully tries to talk his victim into staying has committed two kidnappings.

We recognize that *People v. Salvato* (1991) 234 Cal.App.3d 872 held that Penal Code section 422 does not "' . . . contemplate[] a continuous course of conduct of a series of acts over a period of time. [Citation.]' [Citation.]" (*Salvato*, *supra*, at pp. 882-883.) There, however, the defendant had threatened the victim as many as 16 times between January and March 1988 and between February and April 1989. (*Id*. at pp. 876-877.) We would agree that Penal Code section 422 cannot be stretched into encompassing *that* as a single crime. Making a criminal threat, however, *does* necessarily consist of *some*

8

series of acts over *some* period of time (even if it is only the utterance of several words over several seconds). *Salvato* simply does not tell us where to draw the line on these facts.

In sum, the evidence showed only a single discrete instance of the crime of making a criminal threat. On this evidence, if the jury had found defendant guilty on two counts of making a criminal threat, we would have to reverse one of the convictions. We therefore conclude that a unanimity instruction was not required.

Separately and alternatively, however, even assuming the evidence showed two discrete instances of the crime, the failure to give a unanimity instruction was harmless under any standard. The evidence that Herrera was in fear when she was outside the house was slightly weaker than when she was inside the house. She went outside voluntarily; she stayed there talking to defendant for 10 minutes. Admittedly, she took some pepper spray outside with her, but she did so even before defendant had made any threats. By contrast, once she went inside the house, she manifested fear by hiding in the closet.[3] At trial, of course, she testified that she was not afraid at any point. However, she was impeached with her statement to the police that "she was afraid for her life . . . ."

Thus, a juror could rationally find that the threats inside the house constituted a crime, but the threats outside the house did not; or that both sets of threats constituted a

---

[3] Herrera's brother testified that defendant did not say anything "threatful" inside the house. However, he admitted that he was in the bathroom making a 911 call, so he did not hear everything that defendant said.

9

crime; or that neither set of threats constituted a crime. However, no rational juror could have concluded that the threats *outside* the house *did* constitute a crime yet the threats *inside* the house did *not*. Since the jurors found defendant guilty, we are convinced beyond a reasonable doubt that they agreed unanimously that the threats inside the house constituted a crime.

Defendant argues that some of the threats were conditional. Thus, he argues, some of the jurors could have found that the threats outside the home were too conditional to constitute a crime, while other jurors could have found that the threats inside the home were too conditional to constitute a crime. The problem with this argument is that at least some of the threats, *both* outside and inside, were unconditional.

For example, Herrera testified that, while outside the house, defendant said, "I feel like kicking your ass"; he did not say he was definitely going to kick her ass. However, she also testified that, outside the house, defendant said unconditionally that "he was going to choke me."

Similarly, Herrera testified that when defendant threatened, inside the house, to kick her ass, he prefaced that threat with the words, "if I find out you're cheating[.]" However, she also testified that, inside the house, he said unconditionally, "[I'm] going to choke you and beat your ass up."

In sum, then, even assuming the jurors were reluctant to rely on defendant's arguably conditional threats, there was undisputed evidence that he made unconditional threats, both inside and outside the house. The evidence of conditional threats therefore

10

does not shake our conclusion that the jurors unanimously found a criminal threat inside the house.

## III

## THE IMPOSITION OF FEES AT SENTENCING

Defendant raises two contentions regarding the fees that he was ordered to pay at sentencing.

A.      *Additional Factual and Procedural Background*.

According to the probation report, defendant was 22 years old.  He had been educated through the 11th grade.  He had never been employed; his only income was $825 a month in Supplemental Security Income (SSI) benefits.  He lived with his mother. He had no debts.

The probation report recommended the imposition of $500 as an appointed counsel fee (Pen. Code, § 987.8, subd. (b)), $505 as a presentence investigation and report fee (Pen. Code, § 1203.1b), $40 as a court security fee (Pen. Code, § 1465.8, subd. (a)(1)), and $30 as a criminal conviction fee (Gov. Code, § 70373, subd. (a)(1)).  It also recommended a finding that defendant had the ability to pay the first two of these fees. Finally, it recommended that defendant be required to pay $55 a month toward all fees, starting in 30 days.

At sentencing, the trial court imposed each of these fees in the recommended amount.  However, it ordered defendant to pay $50 a month toward all fees, starting in 60

11

days.  The trial court also made it a condition of probation that defendant "comply with any court-ordered payment schedule."  (Capitalization altered.)

B.     *Ability to Pay*.

Defendant contends that the trial court erred by imposing the appointed counsel fee and the presentence investigation and report fee because there was insufficient evidence that he had the ability to pay them.

Preliminarily, the People argue that defendant forfeited this contention by failing to raise it at the sentencing hearing.  The question of whether a defendant forfeits the insufficiency of the evidence of the ability to pay these fees by failing to raise it below is difficult and unsettled; it is currently before the Supreme Court in *People v. Aguilar* (2013) 162 Cal.Rptr.3d 246, review granted Nov. 26, 2013, S213571.  Hence, we will assume, without deciding, that defendant did not forfeit the issue in this case.  Even if so, however, there was sufficient evidence of ability to pay.

"The court's finding of the defendant's present ability to pay . . . may be implied . . . .  [Citation.]  But any finding of ability to pay must be supported by substantial evidence.  [Citations.]" (*People v. Pacheco* (2010) 187 Cal.App.4th 1392, 1398, disapproved on other grounds in *People v. McCullough* (2013) 56 Cal.4th 589, 599.) "' . . . "Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence.  [Citation.]" [Citation.]  We ""presume in support of the judgment the existence of every fact the trier could reasonably deduce from the

12

evidence.'" [Citation.]" [Citation.]' [Citation.]" (*People v. Lopez* (2013) 56 Cal.4th 1028, 1069.)

The trial court could reasonably find that a person who has income of $825 a month, no housing expenses, and no debts can pay $50 a month toward fees. Defendant argues that the probation report did not list his expenses. However, it did state that he had no debts, he did not pay any child support, he was in good health, and he took no medications; from the fact that he lived with his mother, the trial court could reasonably infer that he had no housing expenses. If he had significant expenses not shown by the probation report, he was free to introduce evidence of them at the sentencing hearing.

Defendant also complains that there was no evidence about *why* he received SSI; he argues that he may have been disabled and thus unable to work. All the trial court needed to know, however, was the fact that he *did* receive SSI. Again, if any other information was relevant, defendant was free to offer it.

Defendant argues that "the procedural safeguards set forth in [Penal Code] section 1203.1b were not followed in the present case." Penal Code section 1203.1b, subdivision (a), as relevant here, provides that: "The court shall order the defendant to appear before the probation officer . . . to make an inquiry into the ability of the defendant to pay all or a portion of [presentence investigation and report] costs. The probation officer . . . shall determine the amount of payment and the manner in which the payments shall be made to the county, based upon the defendant's ability to pay. The probation officer shall inform the defendant that the defendant is entitled to a hearing that includes the right to counsel,

13

in which the court shall make a determination of the defendant's ability to pay and the payment amount."

Here, defendant did appear before the probation officer. Moreover, the probation officer did make a determination of defendant's ability to pay. Defendant complains that there is no evidence in the record that the probation officer ever informed him of his right to a hearing. However, absent contrary evidence, we are entitled to presume that the probation officer did his or her duty. (Evid. Code, § 664.)

We therefore conclude that the trial court properly imposed both the appointed counsel fee and the presentence investigation and report fee.

C.      *Making Payment of the Fees a Condition of Probation.*

Defendant contends that the trial court erred by making the payment of these fees a condition of probation.

The People concede that this was error. While it was appropriate to impose the fees as a result of defendant's criminal conviction, payment could not be made a condition of probation. (*People v. Hart* (1998) 65 Cal.App.4th 902, 906-907.)

As the People point out — and defendant does not dispute — the trial court *was* required to make payment of the *restitution fine* a condition of probation. (Pen. Code, § 1202.4, subd. (m).) However, there is a separate probation term (No. 19) that requires defendant to pay the restitution fine. Accordingly, we may safely delete the (unnumbered) probation term that requires defendant to comply with any court-ordered payment schedule.

14

IV

DISPOSITION

The probation conditions are modified as follows:  The unnumbered probation term that requires defendant to "comply with any court-ordered payment schedule" (capitalization altered) is deleted.  As thus modified, the judgment is affirmed.  The clerk of the superior court is directed to prepare an amended sentencing minute order.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI
J.

We concur:


McKINSTER
P. J.


MILLER
J.

15