*1532
 
 Opinion
 

 WALKER, J.
 

 Jose Eugenio Melhado appeals a judgment of conviction on one count of violating Penal Code section 422
 
 [1]
 
 by making a threat to commit a crime which would result in death or great bodily injury.
 
 [2]
 
 He contends the trial court erred when it refused to give an instruction on jury unanimity, when it modified CALJIC No. 9.94 defining the elements of the crime for which appellant was convicted, and when it gave revised CALJIC No. 2.90 to instruct the jury on reasonable doubt. Appellant further contends that there was insufficient evidence to support his conviction. In the published portion of this opinion we find that the court committed reversible error in failing to instruct the jury on unanimity, but that no error was committed in modifying CALJIC No. 9.94. In the unpublished portion we find that but for the reversible error in instruction, we would have affirmed, as there was substantial evidence to uphold the conviction and there was no error in instructing on reasonable doubt. We reverse.
 

 Facts
 

 On August 24, 1995, Jose Eugenio Melhado brought his car to Affordable Auto Repair in San Francisco to obtain an estimate for having his brakes repaired. After quoting him a price of $700,
 
 [3]
 
 the manager Sam Lay agreed to do the job for $400, which appellant said was all he could afford. The following day (a Friday), when the repairs had been made, appellant returned with about $130 and told Lay that he would have the rest of the money on Monday. Lay kept the car over the weekend, and on the following Monday appellant told him he would not have the money until that Friday. During the week the car remained at the repair shop, where appellant came every day to check on it, to remove or leave items, and to place a “for sale” sign in the window, though Lay refused to let him take a prospective buyer for a drive, because the work had not been paid for. At some point around Friday, September 1, 1995, appellant made a second payment to Lay of about $160, which left approximately $100 still owing. Around this time appellant also gave Lay a key chain with a bullet on it, as a gift for allowing him to make payments. He explained to Lay that he had gotten the bullet in the war, and that he was a Vietnam veteran. Lay thought the bullet was real.
 

 Sometime thereafter, Lay told appellant that he was going to put the car in storage, which would cost $25 per day, if the car was not paid for and picked
 
 *1533
 
 up by Thursday, September 7. Appellant assured him he would get the money and the car. Not having been paid, on Friday, September 8, Lay moved the car into storage.
 

 The following day, Saturday, September 9, appellant came by the shop at 9 or 9:30 a.m. to see his car, as he had done every day since it had been there. When he did not see his car he became angry, and wanted to know where it was. Lay told him it was in storage, and he would not see it until he paid the balance owed. Appellant was visibly upset and said, “I’m going to blow you away if you don’t bring my car back. I’m going home and I’m going to bring a grenade.” After appellant left, Lay, who was scared by the outburst, called the police who came and took a report and advised Lay to call 911 if he saw appellant again.
 

 About 11 that same morning appellant returned to the repair shop, where Lay and two of his mechanics were having lunch by a catering truck parked outside. Appellant appeared to be angry. He walked up to the men and pulled a grenade from his jacket pocket. He held it up in front of his face and yelled: “I’m going to blow you away,” and “I’m going to blow up this place. If I don’t get this car by Monday, then I’m going to blow it away.” Lay thought he pulled out the clip, although Officer Benton did not recall Lay having told her this. One of the mechanics, Jose Gutierrez, did not think the clip had been pulled, but could see the clip between appellant’s fingers, and was scared, thinking the grenade was real. Lay also thought the grenade was real because it looked real and he knew appellant’s background as a Vietnam veteran. Both Gutierrez and Lay feared they would die. Everado Covarrubias, the other mechanic who was present, was not afraid and told Lay not to be frightened, because he thought the grenade was fake; he did not see appellant pull the clip. He also heard appellant say that he was not going to pull the clip, because he did not want to blow everyone up. Appellant left, saying he would be back, and Lay ran to call the police. The police came, searched unsuccessfully for appellant and took a report. The responding officer dissuaded Lay from closing the shop, telling him to call if appellant came back, and they would respond in a matter of seconds.
 

 At approximately 4:30 p.m., for the third time that day, appellant returned to the repair shop, stating he had come to pay for his car. One of the mechanics saw him arrive and told Lay, who called the police; the police arrived within seconds. Noticing a bulge in appellant’s jacket, one of the responding officers reached into his pocket and pulled out a grenade, which he thought was real. He realized it was fake only after he turned it over and saw that the bottom had been drilled out. He then unscrewed the fuse from the top and verified that it was not active. Appellant was arrested.
 

 
 *1534
 
 Discussion
 

 I.
 
 Trial Court’s Refusal to Instruct the Jury on Unanimity
 

 When an accusatory pleading charges the defendant with a single criminal act, and the evidence presented at trial tends to show more than one such unlawful act, either the prosecution must elect the specific act relied upon to prove the charge to the jury, or the court must instruct the jury that it must unanimously agree that the defendant committed the same specific criminal act.
 
 (People
 
 v.
 
 Gordon
 
 (1985) 165 Cal.App.3d 839, 853 [212 Cal.Rptr. 174].) The duty to instruct on unanimity when no election has been made rests upon the court sua sponte.
 
 (People
 
 v.
 
 Salvato
 
 (1991) 234 Cal.App.3d 872, 880 [285 Cal.Rptr. 837]). Because jury unanimity is a constitutionally based concept, “. . . the defendant is entitled to a verdict in which all 12 jurors concur, beyond a reasonable doubt, as to each count charged.”
 
 (People
 
 v.
 
 Jones
 
 (1990) 51 Cal.3d 294, 305 [270 Cal.Rptr. 611, 792 P.2d 643].) From this constitutional origin, the principle has emerged that if the prosecution shows several acts, each of which could constitute a separate offense, a unanimity instruction is required.
 
 (People
 
 v.
 
 Melendez
 
 (1990) 224 Cal.App.3d 1420, 1428 [274 Cal.Rptr. 599] [disagreed with on other grounds in
 
 People
 
 v.
 
 Hernandez
 
 (1995) 34 Cal.App.4th 73 [40 Cal.Rptr.2d 223] and others].)
 

 “It is established that some assurance of unanimity is required where the evidence shows that the defendant has committed two or more similar acts, each of which is a separately chargeable offense, but the information charges fewer offenses than the evidence shows.”
 
 (People
 
 v.
 
 Sutherland
 
 (1993) 17 Cal.App.4th 602, 611-612 [21 Cal.Rptr.2d 752]
 
 (Sutherland),
 
 citing
 
 People
 
 v.
 
 Kent
 
 (1981) 125 Cal.App.3d 207, 213 [178 Cal.Rptr. 28].) By giving the unanimity instruction the trial court can ensure that a defendant will not be convicted when there is no agreement among the jurors as to which single offense was committed. (See
 
 Sutherland, supra,
 
 at p. 612, and cases there cited.)
 

 Appellant here contends that while the prosecution did make an election as to the threat upon which it based its section 422 allegation, the election was only communicated to the judge and opposing counsel, but never to the jury. Thus, he claims that the judge should have given CALJIC No. 4.72,
 
 [4]
 
 which would have informed the jury of the prosecution’s selection of the 11 a.m. threat as the basis for the section 422 charge, and instructed
 
 *1535
 
 that it could only convict if it found that appellant had committed the single act relied upon by the prosecution to prove its case.
 

 Upon defense counsel’s motion, the prosecutor informed the court, out of the jury’s presence, that he was relying on the 11 a.m. threat to support the count alleging a violation of section 422. The jury was never informed, in so many words, that the prosecutor had “elected” to rely on the 11 a.m. event and that to convict each juror was therefore required to find that appellant had made a terrorist threat
 
 at that time.
 
 Respondent argues, however, that in his closing argument to the jury the prosecutor was clear that he was relying on the 11 a.m. event, and that he was mentioning the 9 a.m. and 4 p.m. events only as embellishments to the retelling of the tale.
 
 [5]
 
 The record reveals that the prosecutor did quote to the jury the statement made by appellant at 11 a.m. (“I’m going to blow you up; I want my car Monday or I’m going to blow you up”), described the reaction of the victim to that statement (“Sam Lay understandably was afraid of being hurt right then and there, hurt bad”), and applied these to each element of the crime. Respondent maintains that although the prosecution did also make reference to the 9 a.m. event, he downplayed it, portraying it as an empty threat which was not likely to be believed, and mentioned the 4 p.m. event only to illustrate the reasonableness of Lay’s immediate fear when threatened at 11 a.m. (“Why was he going to come back and why did he come back before 4:30 if everyone had
 
 *1536
 
 until Monday? It [the 11 a.m. threat] sure had the immediate prospect of happening, and the victim understandably was afraid of being hurt”).
 

 It is possible to parse the prosecution’s closing argument in a manner which suggests that more emphasis was placed on the 11 a.m. event than on the others. However, even assuming that this was so, we find that the argument did not satisfy the requirement that the jury either be instructed on unanimity or informed that the prosecution had elected to seek conviction
 
 only
 
 for the 11 a.m. event, so that a finding of guilt could only be returned if each juror agreed that the crime was committed at that time. Because the prosecutor did not directly inform the jurors of his election and of their concomitant duties, it was error for the judge to refuse a unanimity instruction in the first instance and to disregard his sua sponte duty thereafter.
 

 Furthermore, we hold that the instructional error was not harmless beyond a reasonable doubt.
 
 (Chapman
 
 v.
 
 California
 
 (1967) 386 U.S. 18, 24 [87 S.Ct. 824, 828, 17 L.Ed.2d 705, 24 A.L.R.3d 1065].) The evidence regarding the 9 a.m. event established that it, too, could have qualified as a violation of section 422, so that we cannot say beyond a reasonable doubt that each juror agreed on the particular criminal act that formed the basis for the verdict.
 

 In order to find appellant guilty of making a terrorist threat in violation of section 422, evidence to prove the following elements was required: 1) appellant willfully threatened to commit a crime which if committed would result in death or great bodily injury; 2) he made the threat with the specific intent that the statement be taken as a threat; 3) the threatening statement, on its face and under the circumstances in which it was made, was so unequivocal, unconditional, immediate and specific as to convey to the person threatened a gravity of purpose and an immediate prospect of execution of the threat; and 4) the threatening statement caused the other person reasonably to be in sustained fear for his own safety, regardless of whether appellant actually intended to carry out the threat. (See CALJIC No. 9.94.)
 

 We consider the evidence in light of these elements. At 9 a.m., when appellant first learned that his car was no longer at the shop, he became visibly upset and said, “I’m going to blow you away if you don’t bring my car back. I’m going home and I’m going to bring a grenade.” Lay testified that he called the police because he felt scared. This evidence was plainly adequate to satisfy the first, second and fourth elements of the crime: Blowing someone up with a grenade would undoubtedly result in death or great bodily injury; the jury could certainly conclude that appellant made the statement with the specific intent that it be taken as a threat; and Lay
 
 *1537
 
 testified that he was afraid when he heard the statement, which seems a perfectly reasonable response. But was the statement, which threatened harm
 
 if
 
 appellant’s car was not returned, and
 
 after
 
 he went home to get his grenade “on its face and under the circumstances ... so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat?” To answer this question, we look to those cases which have discussed this phrase in the context of determining whether conditional threats such as “if you go to court and testify, I’ll kill you,” can support a section 422 conviction.
 

 The court in
 
 People
 
 v.
 
 Brown
 
 (1993) 20 Cal.App.4th 1251 [25 Cal.Rptr.2d 76]
 
 (Brown)
 
 held that the threat “if you call the police, I’ll kill you” was not sufficient to support a section 422 conviction, because it constituted a conditional threat, and the statute required an unconditional threat. With the exception of that single case, each subsequent court to have considered whether a conditional threat can support a conviction for making a terrorist threat has disagreed with
 
 Brown’s
 
 literal approach and concluded that it can. (See
 
 People
 
 v.
 
 Brooks
 
 (1994) 26 Cal.App.4th 142 [31 Cal.Rptr.2d 283]
 
 (Brooks)
 
 [“If you go to court and testify, I’ll kill you”];
 
 People
 
 v.
 
 Gudger
 
 (1994) 29 Cal.App.4th 310 [34 Cal.Rptr.2d 510] [in dictum];
 
 People
 
 v.
 
 Stanfield
 
 (1995) 32 Cal.App.4th 1152 [38 Cal.Rptr.2d 328]
 
 (Stanfield)
 
 [letters and phone calls from defendant to her former attorney threatening to kill him if he did not join her in bringing the “Universe Reform Party” to power];
 
 People
 
 v.
 
 Dias
 
 (1997) 52 Cal.App.4th 46 [60 Cal.Rptr.2d 443] [threats by defendant to his ex-wife that he would kill her if she did not stop seeing her boyfriend or if she was lying to him, and threats to the boyfriend that he would be killed if he called the police]; and
 
 People
 
 v.
 
 Martinez
 
 (1997) 53 Cal.App.4th 1212 [62 Cal.Rptr.2d 303] [statements “I’m going to get you,” “I’ll get back to you” and “I’ll get you” when taken in the context of the surrounding circumstances were adequate to support a section 422 conviction].)
 

 As the court in
 
 Brooks
 
 explained: “The statute provides that the threat must be, inter alia,
 
 ‘so
 
 unconditional ... as to convey to the [victim] a gravity of purpose and an immediate prospect of execution^] ’ (Italics added.) If the fact that a threat is conditioned on something occurring renders it not a true threat, there would have been no need to include in the statement the word ‘so.’ Under Brooks’s approach, every threat that is conditional would go unpunished, no matter how much fear is reasonably felt by the victim. This would lead the way to such an absurdity as excluding from the statute’s prohibition the threat, ‘If the sun rises tomorrow, I will kill you.’ Such a result clearly undermines the purpose of the statute. We believe Penal Code section 422 was aimed
 
 precisely
 
 at the kind of behavior in which
 
 *1538
 
 Brooks engaged here. If not this, then what?”
 
 (Brooks, supra,
 
 26 Cal.App.4th at p. 149, original italics.)
 

 While
 
 Brooks
 
 focused on the question of conditionality, the analysis applies equally to each of the other adjectives included in the statute. “The use of the word ‘so* indicates that unequivocality, unconditionality, immediacy and specificity are not absolutely mandated, but must be sufficiently present in the threat and surrounding circumstances to convey gravity of purpose and immediate prospect of execution to the victim. The four qualities are simply the factors to be considered in determining whether a threat, considered together with its surrounding circumstances, conveys those impressions to the victim.”
 
 (Stanfield, supra,
 
 32 Cal.App.4th at pp. 1157-1158.)
 

 We consider one additional point not expressly addressed by the cases we have mentioned. Section 422 makes illegal a threat which conveys a gravity of purpose and the
 
 “immediate
 
 prospect of execution.” How are we to understand the requirement that the prospect of execution be immediate, when, as we have seen, threats often have by their very nature some aspect of conditionality: A threat is made to convince the victim to do something “or else.” In light of the analysis and reasoning articulated in
 
 Brooks
 
 and the other cases, which place important emphasis on the effect the threatening words have on the victim, we understand the word “immediate” to mean that degree of seriousness and imminence which is understood by the victim to be attached to the
 
 future prospect
 
 of the threat being carried out, should the conditions not be met.
 
 [6]
 

 Respondent’s contention that the 9 a.m. event did not satisfy the third element of the crime because appellant displayed no grenade at that time is unavailing. In
 
 Stanfield
 
 the victim never came face-to-face with the defendant during the time she was making threats on his life; she sent letters, made a phone call and delivered a package containing a dead cat and threatening notes. Yet, the court held the threats were sufficiently unequivocal, unconditional, immediate and specific to support a conviction for making terrorist threats. The 9 a.m. threat involved a face-to-face confrontation with an angry man threatening to go home and get his grenade. The threat was sufficiently frightening to the victim that he called the police, indicating that he feared for his safety. A reasonable juror could conclude that this first threat met all of the elements of the crime.
 

 
 *1539
 
 As we have discussed, the evidence presented in this case established that appellant committed two acts of making terrorist threats, each of which could have been charged as a separate offense, yet the matter went to the jury on only one such offense.
 
 [7]
 
 Because the prosecution’s election was never clearly communicated to the jury, the trial court should have instructed on unanimity. To hold otherwise would leave open the door to allowing a prosecutor’s artful argument to replace careful instruction. If the prosecution is to communicate an election to the jury, its statement must be made with as much clarity and directness as would a judge in giving instruction. The record must show that by virtue of the prosecutor’s statement, the jurors were informed of their duty to render a unanimous decision as to a particular unlawful act.
 

 We cannot conclude that the instructional error was harmless by making a finding that “disagreement by the jury is not reasonably probable”
 
 (People
 
 v.
 
 Melendez, supra,
 
 224 Cal.App.3d at p. 1430) because we cannot say that, beyond a reasonable doubt, each of the 12 jurors agreed unanimously that the same act constituted the commitment of the crime. In fact, it is likely that the jury never considered the acts separately, as they were never instructed that they must do so. Accordingly, the conviction must be reversed.
 

 II.
 
 Trial Court’s Modification of CAUIC No. 9.94
 

 [8]
 

 The trial court instructed the jury in the elements of the crime of malting a terrorist threat in violation of section 422. At the prosecution’s
 
 *1540
 
 request the court added the following sentence to the standard instruction, which is set out in relevant part in the margin: “Conditional threats are true threats if their context reasonably conveys to the victim that they are intended.” This language was extracted from the holding in
 
 Brooks, supra,
 
 26 Cal.App.4th at pages 144, 149. Appellant contends that the modification was erroneous, as it wrote out of the statute the element of conditionality, allowing for conviction upon a finding that the threat was true.
 

 As we have discussed above, we agree with the holding in
 
 Brooks.
 
 By indicating to the jury that a conditional threat could qualify as a true threat under the statute, if the context conveyed to the victim that the threat was intended, the trial judge did no more than clarify the jury instruction so as to render it consistent with
 
 Brooks.
 
 As
 
 Brooks
 
 explained, the gravamen of the crime of making a terrorist threat rests upon the effect which the threat has upon the victim. The language added to the instruction merely makes clear that the jury is to consider the significance accorded the statement by the victim. We find no error.
 

 HI., IV.
 
 *
 

 V.
 
 Disposition
 

 We reverse and remand for retrial. Phelan, P. J., and Corrigan, J., concurred.
 

 [1]
 

 A11 statutory references are to the Penal Code.
 

 [2]
 

 Appellant was also charged with attempted extortion (§ 524) and acquitted.
 

 [3]
 

 There was some evidence presented to suggest that the original bid was $500. We find this discrepancy to be immaterial to the issues presented.
 

 [4]
 

 CALJIC No. 4.72 provides: “The People have elected to rely on the acts testified as to having occurred on the_day of__ 19_, as constituting the crime charged against the defendant. [SD You must not find the defendant guilty of the offense charged
 
 *1535
 
 against [him] [her] unless you find that [he] [she] committed this crime at that particular time, regardless of your belief as to [his] [her] commission of the crime at some other time.”
 

 [5]
 

 The prosecutor argued as follows: “So if you make a dangerous threat, that’s a crime. Now, not any kind of threat, a dangerous threat. And there are four things that have to be shown to you for it to be a dangerous threat. The judge read them to you in what I call that law language .... but in English this is what it means. [QQ One, the defendant made a dangerous threat: I’m going to blow you up. I’m going to blow up your shop. I’m going to blow you away. [QQ And he wanted it to be taken as a threat. It wasn’t: Hey, this is funny. He meant that to be taken as a threat. That was his goal. That’s what he was intending, that specific intent the judge was talking about. I want you to take this seriously. [QQ And it sure looked serious, and it sure looked like it could be carried out right away. In other words, what he said, in the context in which he said it, that is how he did it and what he said. Sure looked like it was a serious threat. [QA Maybe at 9:00 o’clock it didn’t seem serious. He didn’t show a grenade. He didn’t have a grenade with him. Not many people must have a grenade at home, anyway. I’ll go home and get my grenade. Yeah, right. Whatever. [QQ But when he comes back and has the grenade in his hand and says: I’m going to blow you up; I want my car Monday or I’m going to blow you up. [QQ You beard what Officer Nietz said. Pull the pin, three to five seconds and everything explodes. It sure looked serious-and don’t tell me this grenade doesn’t look serious-and it looked like he would carry it out right away. That’s the third thing. [U The fourth one is that the victim understandably was afraid of being hurt. I mean hurt bad, not just, you know, kind of hurt, but hurt badly. Lawyers call hurt bad ‘great bodily injury or death’ because it’s more words, but that’s what it means. It’s a phrase that he was going to get hurt bad. [QQ Once the defendant made a dangerous threat, and he wanted it to be taken as a threat and it sure looked serious and looked like it could be carried out right away and Sam Lay understandably was afraid of being hurt right then and there, hurt bad, that is a dangerous threat. And the law says you don’t have to wait until it happens."
 

 [6]
 

 The “immediate
 
 prospect
 
 of execution” in the context of a conditional threat is obviously to be distinguished from those cases dealing with threats of immediate harm, recognized at the very moment of the threat, such as those which support a defense of duress or necessity. (See, e.g.,
 
 People
 
 v.
 
 Lovercamp
 
 (1974) 43 Cal.App.3d 823 [118 Cal.Rptr. 110, 69 A.L.R.3d 668],
 
 People
 
 v.
 
 Farley
 
 (1996) 45 Cal.App.4th 1697 [53 Cal.Rptr.2d 702], and
 
 People
 
 v.
 
 Quinlan
 
 (1970) 8 Cal.App.3d 1063 [88 Cal.Rptr. 125].)
 

 [7]
 

 The information charged Melhado with two counts of violating section 422. Prior to the commencement of trial it appears the prosecution opted to go forward with only one of the counts. As a result, the jury was instructed on only one such count and was given only two verdict forms: one for the section 422 and one for the extortion count.
 

 [8]
 

 CALJIC No. 9.94 provides in pertinent part as follows: “[Defendant is accused [in Count[s]_] of having violated section 422 of the Penal Code, a crime.] [(]Q Every person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement is to be taken as a threat, even if there is no intent of actually carrying it out, which threat, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family’s safety, is guilty of a violation of Penal Code section 422, a crime. ... [H In order to prove this crime, each of the following elements must be proved: [*1 1. A person willfully threatened to commit a crime which if committed would result in death or great bodily injury to another person; [C|Q 2. The person who made the threat did so with the specific intent that the statement be taken as a threat; [*]Q 3. The threatening statement on its face, and under the circumstances in which it was made, was so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat; and [<]Q 4. The threatening statement caused the other person reasonably to be in sustained fear [for [his] [or] [her] own safety] [or] [for [his] [or] [her] immediate family’s safety]. [TQ It is immaterial whether the person who made the threat actually intended to carry it out.”
 

 *
 

 See footnote,
 
 ante,
 
 page 1529.