Filed 10/14/15  P. v. Chavez CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>          Plaintiff and Respondent,<br><br>     v.<br><br>JOAQUIN CHAVEZ,<br><br>          Defendant and Appellant. | B256014<br><br>(Los Angeles County<br> Super. Ct. No. BA415426) |

APPEAL from the judgment of the Superior Court of Los Angeles County. Rand S. Rubin, Judge.  Affirmed.

Laurie Wilmore, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and Roberta L. Davis, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

Defendant and appellant Joaquin Chavez was convicted by jury of assault with a firearm, making criminal threats, and dissuading a witness by force or threat. Defendant appeals, contending the court prejudicially erred by admitting uncharged prior crimes evidence and failing to sua sponte give a unanimity instruction. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Elihu Castro lived with his wife, Adrianna Navarro, and two of his children in a first floor apartment in the city of Los Angeles. Mr. Castro knew defendant was in a relationship with his adult daughter, Kim Castro. Ms. Castro had lived with defendant for a period of time. Mr. Castro did not know defendant well, but had seen him a few times, once to give him some money to help with rent and also to give him some used furniture.

At approximately 3:00 a.m. on July 28, 2013, Mr. Castro and his wife were awakened by the sound of a male voice shouting profanities, and the sound of a loud car engine outside their apartment. Almost immediately, they heard what sounded like a large rock hitting the front door of their apartment. Mr. Castro ran to the front door and went outside. He opened the front gate to the street and saw a red truck parked with its engine running. Defendant was sitting in the front seat with the driver's side door open. Mr. Castro heard the sound of a gun slide being "racked," which he described as a "tsk, tsk" sound. Defendant raised his right arm and pointed a black gun directly at Mr. Castro. Mr. Castro was "very, very scared" and covered his face with his hands. Defendant yelled in English, something to the effect that, "[I]f you call the police, you will see what happens, motherfucker." Mr. Castro's primary language is Spanish but he knew enough English to understand what defendant yelled. Mr. Castro then heard his wife scream.

While Mr. Castro went outside, Ms. Navarro went to grab her cell phone. She then went outside and stood on a small step ladder to get a better view over the fence. Defendant was sitting in the front of his truck with the door open. She saw the "shape of a handgun" in defendant's hand and he was pointing it at her husband near the front gate. Ms. Navarro screamed, and defendant then drove away very "fast."

2

Within a few "seconds" of driving away, defendant sent a text message, written in Spanish, to Mr. Castro's cell phone that said "Tell him to come out and tell it to me in my face and do not call the police."

Mr. Castro did not report the incident to police until about noon the following day because he feared for the safety of his family and himself. About a year earlier, his daughter, Kim Castro, had been shot in the leg. Mr. Castro was particularly scared by defendant's conduct because his daughter said that defendant was the one who had ordered her to be shot. Mr. Castro feared defendant could "send someone" to hurt him or a member of his family or "he could come himself" to do it. Defendant had also sent other threatening texts to Mr. Castro in the two days leading up the July 28 incident. Mr. Castro decided to tell the police because "enough is enough;" defendant had come to his home to threaten him, and he decided it had to stop.

Defendant was charged by information with assault with a firearm (Pen. Code, § 245, subd. (a)(2); count 1), criminal threats (§ 422, subd. (a); count 2), and dissuading a witness by force or threat (§ 136.1, subd. (c)(1); count 3). It was specially alleged defendant personally used a firearm in the commission of each offense. (§ 12022.5, subd. (a).) Defendant pled not guilty and denied the special allegations.

The case proceeded to a jury trial in March 2014. Defendant presented several motions in limine. The court granted defendant's request to exclude defendant's 1994 misdemeanor conviction for gun possession, but denied defendant's request to exclude evidence that his nickname was "*Pistolero*." Defendant also sought an order excluding any testimony about the 2012 shooting of Ms. Castro. Defendant argued he was never charged with that crime, it was not relevant and it was unduly prejudicial under Evidence Code section 352. After initially deferring a ruling on the motion, the court ruled the 2012 shooting incident was admissible, explaining: "I think it is absolutely relevant, and especially the fact that the father, Mr. Castro, knew about it certainly goes to the fact that he's in sustained fear when someone is pointing a gun at him, so I'll allow it."

Mr. Castro and his wife testified, with the assistance of a Spanish language interpreter, to the facts of the July 28, 2013 incident set forth above.

3

Kim Castro testified that she dated defendant for about two years. She explained that in June 2012, defendant was upset with her and was threatening her to discourage her from breaking up with him. He came over to her house with his friend, Bennie, and brandished a handgun. Defendant "flossed" the gun, waving it in the air and trying to scare her. Defendant then handed the gun to his friend and said his name, which Ms. Castro understood to be defendant's direction to Bennie to shoot. Bennie shot at Ms. Castro twice, missing the first time and hitting her in the leg the second time. Ms. Castro refused to cooperate when the police tried to interview her because she was scared of defendant. He had told her that if she said anything, he would come after her, her daughters and her brother. While Ms. Castro was still on crutches for the injury, she spoke with her father and told him defendant had been responsible.

Ms. Castro also testified that by July 2013 she was still seeing defendant. At the time, she was using her father's cell phone regularly. Defendant knew the number and texted her using her father's number.

Officer Omar Franco of the Los Angeles Police Department testified that he arrested defendant on August 20, 2013. At the time of defendant's arrest, Ms. Castro was with him. Defendant told Officer Franco he wanted his cell phone and that Ms. Castro had it. She took it out of her pocket and gave it to Officer Franco. The cell phone had a photograph of guns stored in its memory. The records from defendant's cell phone account showed defendant was in the city of Los Angeles at 3:00 a.m. on July 28, 2013.

After his arrest, defendant continued to make harassing phone calls to Mr. Castro, despite a protective order. During the calls, defendant made threats against both Mr. Castro and his daughter.

On August 21, 2013, the police executed a search warrant at the home of defendant's mother, Maria Chavez. She testified defendant does not live with her, but occasionally spends the night at her home in Hesperia. She showed the police the safe in her home in which she and her husband store two guns, both stainless steel. She said defendant had recently taken a picture of the guns with his cell phone.

4

A private investigator testified for the defense. He confirmed the Castros' first floor apartment faced the street and has a wrought iron fence, approximately six feet high, around the front patio. Bamboo fencing is attached to the inside of the wrought iron making it somewhat difficult to see in from the street. He described the level of illumination from street lights near the apartment as "good."

During the court's discussion of the jury instructions with counsel, defendant did not request a unanimity instruction.

During closing argument, the prosecutor argued, in connection with count 2, that defendant made two threats, the first one orally while pointing the gun at Mr. Castro, and the second one by way of text shortly thereafter. The prosecutor did not specify which threats constituted dissuasion of a witness in count 3.

The jury found defendant guilty on all three counts, and found true the personal use of a firearm allegation as to counts 1 and 2 (assault with a firearm and criminal threats). The jury found not true the special allegation as to count 3 (dissuading a witness).

Defendant was sentenced to a state prison term of nine years. The court sentenced defendant to the high term of four years on count 1 (assault with a firearm), plus the midterm of four years on the firearm allegation. The court imposed and stayed, pursuant to Penal Code section 654, the sentence on count 2 (criminal threats). As to count 3 (dissuading a witness), the court imposed a consecutive one-year term (one-third the midterm), explaining it did "not think this is the same act, but rather the jury convicted the defendant on count 3 in regard to the text message . . . . This will explain why the jury did not find the gun allegation true as to count 3."

This appeal followed.

## DISCUSSION

### 1.     The Prior Uncharged Crime Evidence

Defendant contends the trial court prejudicially erred in admitting testimony from the victim and his daughter about the uncharged June 2012 shooting of Ms. Castro. Defendant argues it was not related to the July 2013 incident at all, and on the issue of

5

Mr. Castro's fear, it was at best cumulative because there was no dispute at trial that having a gun pointed in one's direction would cause fear. Defendant further contends the June 2012 incident was substantially prejudicial because it was more inflammatory than the current charges, and defendant was not charged or convicted of the shooting. Respondent contends the issue was forfeited by defendant's failure to raise a specific Evidence Code section 1101 objection at trial, but that in any event, the evidence was properly admitted on the issue of the reasonableness of Mr. Castro's fear caused by defendant's threats.

Defendant's objections to the evidence based on lack of relevance and prejudice adequately embraced the issue of whether the June 2012 shooting incident was properly admitted under Evidence Code section 1101. (See *People v. Clark* (1992) 3 Cal.4th 41, 124.) We therefore address the merits.

We review evidentiary rulings under Evidence Code sections 1101 and 352 for an abuse of discretion. (*People v. Foster* (2010) 50 Cal.4th 1301, 1328 (*Foster*); accord, *People v. Mungia* (2008) 44 Cal.4th 1101, 1130.) Under this standard, " ' "a trial court's ruling will not be disturbed, and reversal . . . is not required, unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." [Citation.]' [Citation.]" (*Foster*, *supra*, at pp. 1328-1329.) We conclude the trial court did not commit error in admitting the testimony concerning the June 2012 shooting of Ms. Castro.

The general rule is that evidence of prior crimes is *inadmissible* to prove the defendant's conduct on a specific occasion. However, it is well established that such evidence may be admissible *if relevant to prove a material fact in issue* and not simply to establish the defendant's general criminal disposition or "bad character." (*People v. Hovarter* (2008) 44 Cal.4th 983, 1002; see also Evid. Code, § 1101, subd. (b), italics added ["Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act *when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident . . . ) other than his or her disposition to commit such an act*"].)

6

By pleading not guilty, defendant placed all elements of the charged offenses in issue. (*People v. Lindberg* (2008) 45 Cal.4th 1, 23; accord, *People v. Balcom* (1994) 7 Cal.4th 414, 422.) One of the elements of count 2 (criminal threats) is that the threat caused the victim "reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety." (Pen. Code, § 422, subd. (a); see also CALCRIM No. 1300.) Whether or not Mr. Castro reasonably feared for his safety or the safety of his family as a result of defendant brandishing a gun and verbally threatening him was therefore a material fact in dispute.

Defendant contends the evidence was at best, cumulative, on the issue of Mr. Castro's fear because, in essence, it is obvious that anyone would be fearful to have a gun pointed directly at them. Defendant also argues he did not offer evidence directly contesting that element of count 2. However, even when a defendant offers to *stipulate* to an element of a charged offense, the "general rule is that the prosecution cannot be compelled to accept a stipulation for purposes of rendering evidence irrelevant if the effect would be to deprive the prosecution's case of its persuasiveness and forcefulness, unless the evidence is more prejudicial than probative." (*People v. Ghebretensae* (2013) 222 Cal.App.4th 741, 754-755; accord, *People v. Edelbacher* (1989) 47 Cal.3d 983, 1007.)

Here, defendant did not offer to stipulate to that element of count 2. Quite the contrary; defendant cross-examined the victim as to whether he actually feared defendant and argued in closing that the jury should consider whether Mr. Castro's fear was reasonable. The prosecution bore the burden of proof beyond a reasonable doubt as to the victim's actual fear from defendant's conduct. The evidence that Mr. Castro knew defendant had brandished a firearm at his daughter, threatened her and then carried out the threat by having her shot was highly relevant evidence on the reasonableness and extent of Mr. Castro's fear when defendant engaged in similar conduct directed at him.

Defendant contends the evidence was nonetheless unduly prejudicial and should have been excluded on that basis. "The word 'prejudicial' is not synonymous with 'damaging.' [Citation.] Rather, evidence is unduly prejudicial under section 352 only if

7

it ' " 'uniquely tends to evoke an emotional bias against the defendant as an individual and . . . has very little effect on the issues' " ' [citation], or if it invites the jury to prejudge ' " 'a person or cause on the basis of extraneous factors' " ' [citation]." (*People v. Johnson* (2010) 185 Cal.App.4th 520, 534.)

The June 2012 shooting incident was not more inflammatory than the charged offense. In the June 2012 incident, Ms. Castro was actually shot, and her father was not, but the charged offense involved equally malicious and violent behavior directed at a victim in a vulnerable situation, awakened in the middle of the night at his own home, with his wife and children inside. The June 2012 incident was also not remote. It had occurred only a year earlier and evinced a pattern of threatening behavior by defendant toward Ms. Castro and her family that lent credibility to Mr. Castro's fear of defendant and the likelihood of his ability and willingness to carry out his threats. We find no error by the trial court in admitting such evidence.

## 2. The Unanimity Instruction

Defendant contends the court erred in failing to give, sua sponte, the unanimity instruction (CALCRIM No. 3500) as to count 2 (criminal threats). We review a claim of instructional error de novo. (*People v. Alvarez* (1996) 14 Cal.4th 155, 217.)

The purpose behind the unanimity instruction is " 'to prevent the jury from amalgamating evidence of multiple offenses, no one of which has been proved beyond a reasonable doubt, in order to conclude beyond a reasonable doubt that a defendant must have done *something* sufficient to convict on one count.' [Citation.]" (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.) The instruction is appropriately given " 'when conviction on a single count could be based on two or more discrete criminal events,' but not 'where multiple theories *or acts* may form the basis of a guilty verdict on one discrete criminal event.' [Citation.]" (*Id*. at p. 1135, italics added.)

The law is well established " 'that some assurance of unanimity is required where the evidence shows that the defendant has committed two or more similar acts, each of which is a separately chargeable offense, *but the information charges fewer offenses than the evidence shows*.' [Citation.]" (*People v. Melhado* (1998) 60 Cal.App.4th 1529, 1534,

8

italics added.)  The information here charged defendant with two distinct threat offenses: count 2 (criminal threats) and count 3 (dissuading a witness by force or threat).  Two different threats were presented as evidence, defendant's verbal threat while brandishing a firearm directly at the victim, and a second electronic threat by way of text shortly after fleeing the scene.

Assuming, without deciding, that the unanimity instruction was required on such facts, any error in failing to so instruct was harmless beyond a reasonable doubt.  The jury found defendant guilty on count 2, making a criminal threat, with the firearm allegation found true.  The jury also found defendant guilty on count 3 of dissuading a witness, but found the firearm allegation *not* true.  The jury plainly found defendant guilty of making both threats of which he was charged; the verbal threat while brandishing a gun in count 2 and the threat by way of text in count 3.  There is no basis on which to infer that the jury amalgamated evidence of the two different acts without agreeing unanimously defendant committed each of them.  They unanimously agreed he committed both acts and convicted him, in separate counts, of both threats.

### DISPOSITION

The judgment of conviction is affirmed.


GRIMES, J.

We concur:


BIGELOW, P. J.


RUBIN, J.

9