Filed 3/28/24  P. v. Estrada CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>v.<br><br>FRANCISCO ESTRADA,<br><br>　　　　Defendant and Appellant. | A168623<br><br>(Sonoma County Super.<br>Ct. No. SCR7529531) |

Francisco Estrada challenges his conviction for attempted criminal threats to his niece, Mariah Ackerman.  (See Penal Code §§ 422, subd. (a), 664.)  Estrada, Ackerman, and Ackerman's then-boyfriend, Cody Heagney, were socializing one night, and attempted to go to a comedy show.  Estrada became angry when Ackerman was denied entry to the show, and began to argue with security employees and then with Ackerman.  Estrada, Ackerman, and Heagney then all returned to Estrada's car and drove away.  During the drive and at various stops along the way, Estrada assaulted and threatened to kill Ackerman and Heagney.  When Ackerman and Heagney got out of Estrada's car and ran to his nearby apartment, Estrada made one or more additional threats.

Estrada contends that the trial court erred by failing to instruct the jury that it had to agree unanimously on the specific threat he made to

Ackerman. The Attorney General argues that no instruction was required because the threats to Ackerman were part of a single, continuous course of conduct and Estrada presented a unified defense to all the threats directed at her. We affirm because we agree that no unanimity instruction was required.

## BACKGROUND

### I. Facts

At trial, Heagney testified that he, Estrada, and Ackerman had met up on the day of the crimes with the plan to "hang out" and then go to a comedy show in the evening. All three were drinking at Estrada's apartment and went to a restaurant before heading to the show. In the parking lot, Estrada showed Heagney a gun in the trunk of his car, although Heagney agreed that Estrada "was showing it to [him] like check this out this cool thing I have." Other testimony established that the gun was gold-colored and was not operational.

Ackerman, then 18 years old, was under the 21-year age limit for the show, and when she was denied entry, Estrada began to argue with security. Ackerman attempted to intervene, but all three eventually returned to Estrada's parked car, where Ackerman and Estrada "started arguing and fighting." All three got into the car, with Estrada driving. The arguing between Estrada and Ackerman escalated. When Estrada stopped the car at a traffic light, he and Ackerman had a physical altercation. Estrada threatened to kill both Heagney and Ackerman, and told them to get out of the car.

Ackerman and Heagney got back in the car and the three continued to drive. The arguing and physical fighting continued. Heagney was concerned after having seen Estrada's gun, but he and Ackerman also needed to get back to Estrada's apartment to retrieve their belongings, including the keys

2

to Heagney's truck so they could go home. Estrada stopped the car at a gas station near his apartment. He told Heagney and Ackerman to get out of the car again.

Ackerman and Heagney ran back to Estrada's apartment. Heagney arrived at Estrada's apartment first. Right afterward, Estrada drove in and pulled into a parking spot. Estrada was cursing and telling Heagney to get away and that he was going to shoot and kill him. Estrada then got out of his car and moved toward the trunk where the gun was located. Estrada's threat seemed serious to Heagney because Estrada was mad and "kind of yelling," and he "got out of his car pretty quick and went straight for his trunk." Ackerman arrived and she and Estrada were yelling at each other again. Ackerman and Heagney eventually retrieved their belongings. Afterward, Ackerman called her father and went to the police station to make a report.

In her interview with police that night, Ackerman reported that Estrada "kept saying, I'm gonna fucking kill you. He has an AK in the back of his trunk. And he just kept threatening, I'm gonna kill you, I'm gonna kill you." She said Estrada repeated it later at his apartment, "I'm going to kill both of you." Her statements to police were admitted at trial, but on the stand Ackerman denied that she ever heard Estrada threaten her. She testified that she had not been scared of Estrada, and that she did not think the gun in the trunk of his car was real because, given its gold color, it did not look like a legitimate firearm.

## II.  Procedural History

Estrada was charged with assault, battery, and making criminal threats against Ackerman and Heagney. Counts 2 and 3, which alleged the threats against Ackerman and Heagney, respectively, did not identify a specific threat or factual basis for the charges.

3

In closing argument, the prosecution referred to the threat to Ackerman when Estrada stopped his car at the traffic light, as well as to Ackerman's report to police regarding the ongoing threats during the car ride. The prosecution noted Estrada's additional threat only to Heagney outside Estrada's apartment. In rebuttal, the prosecution noted Estrada's "multiple threats," starting at the stoplight, then "ongoing throughout the whole car ride," "and then . . . the threats to [Heagney] at the apartment complex itself."

In closing, defense counsel similarly referred to the threats to Ackerman generally as being "all evening long," and contrasted the threat to Heagney only at Estrada's apartment. Defense counsel argued that the evidence of what happened that night was too inconsistent and contradictory to prove beyond a reasonable doubt that any threats were made, that the investigation was incomplete, that the threats were not clear or specific enough to sustain a conviction, and that Ackerman did not fear for her safety.

The parties and court discussed the need for a unanimity instruction to the jury as to the threats to Heagney. Estrada's counsel did not argue that there should be a unanimity instruction as to Ackerman, stating, "While I agree that what happened in the car is probably a continuous course of conduct . . . I think there's two distinct separate things there that a unanimity instruction is needed on between what occurred in the car and what occurred during that separate piece of time in the parking lot with [Ackerman] not present." The court noted that there were two different sets of threats to Heagney: the first in the car ride, and the second when Heagney and Estrada arrived back at Estrada's apartment and Estrada moved toward what Heagney believed was a gun in the trunk of his car. The court

4

ultimately instructed the jury that they could not find Estrada guilty of threatening Heagney unless they agreed unanimously on a specific threat.

The jury found Estrada guilty of all counts, except that it found him guilty only of attempted criminal threats against Ackerman.

## DISCUSSION

Estrada argues that because the prosecution did not elect to prove that he made a specific threat against Ackerman, the trial court was required to instruct the jury that it must agree unanimously on a specific threat to her. We review legal questions relating to instructional error de novo. (*People v. Hernandez* (2013) 217 Cal.App.4th 559, 568 (*Hernandez*).)

"[J]ury unanimity is a constitutionally based concept . . . . '[T]he defendant is entitled to a verdict in which all 12 jurors concur, beyond a reasonable doubt, as to each count charged.' " (*People v. Melhado* (1998) 60 Cal.App.4th 1529, 1534.) "When an accusatory pleading charges the defendant with a single criminal act, and the evidence presented at trial tends to show more than one such unlawful act, either the prosecution must elect the specific act relied upon to prove the charge to the jury, or the court must instruct the jury that it must unanimously agree that the defendant committed the same specific criminal act. [Citation.] The duty to instruct on unanimity when no election has been made rests upon the court sua sponte." (*Ibid.*; *Hernandez*, *supra*, 217 Cal.App.4th at p. 569.)

While a unanimity instruction generally is required where the trial evidence shows more than one unlawful act that could constitute the charged crime, no " 'instruction is required when the acts alleged are so closely connected as to form part of one continuing transaction or course of criminal conduct.' " (*People v. Percelle* (2005) 126 Cal.App.4th 164, 181 (*Percelle*); cf. *Hernandez*, *supra*, 217 Cal.App.4th at pp. 567, 570–571 [where prosecution

5

argued two distinct instances of defendant's possession of a gun, unanimity instruction required].)  Here, the prosecution presented the threats to Ackerman as a continuous course of conduct, referring generally to the series of threats to kill Ackerman that Estrada made over the course of the night. (Cf. *People v. Napoles* (2002) 104 Cal.App.4th 108, 119 [in child sexual abuse cases, where "testimony is generic in nature, devoid of specific details" of multiple separate unlawful acts, the continuous course of conduct rule applies].)  Although Heagney testified to a specific threat Estrada made to him and Ackerman while stopped at the traffic light, and Ackerman told police initially that Estrada threatened her at his apartment, the jury had no reason to differentiate those threats from the larger course of conduct—i.e., that between the comedy show parking lot and his apartment, Estrada continuously threatened to kill Ackerman.  That contrasts with the unique threat made only to Heagney at Estrada's apartment, when Estrada moved toward the trunk of his car as though to retrieve his gun.  Contrary to Estrada's contentions on appeal, the parties and court agreed that the threat to Heagney at Estrada's apartment was distinct from the other threats Estrada made that evening.  Accordingly, that specific threat, unlike the rest, warranted a unanimity instruction.

That defense counsel presented a unified defense to all the threats to Ackerman underscores that no instruction was needed.  " 'The "continuous conduct" rule applies when the defendant offers essentially the same defense to each of the acts, and there is no reasonable basis for the jury to distinguish between them.' " (*Percelle, supra*, 126 Cal.App.4th at p. 181; see *People v. Jennings* (2010) 50 Cal.4th 616, 680 [finding continuous course of conduct exception applied where defendant presented two uniform defenses to multiple instances of unlawful conduct spanning months].)  "If there was no

6

evidence from which the jury could have found defendant was guilty of one [crime] and not the other, the instruction is not required." (*Percelle,* at p. 182.) In such cases, "a guilty verdict indicates that the jury rejected the defendant's defense in toto." (*Hernandez, supra,* 217 Cal.App.4th at p. 572; see, e.g., *Percelle*, at p. 182 [where lack of proof of an element is common defense to two criminal acts, no instruction is necessary].)

Estrada presented several defenses uniformly to all the alleged threats to Ackerman. Defense counsel argued that there was not sufficient evidence to show that the threats occurred; that the threats were not sufficiently clear and specific to support a conviction; and that the threats did not cause Ackerman to be afraid. Defense counsel did not present a unique defense to any specific threats to Ackerman—at the traffic light, at Estrada's apartment, or any others—and treated them instead as a unitary course of conduct. Under these circumstances, no unanimity instruction was required. (*Percelle*, *supra*, 126 Cal.App.4th at p. 182.)

**DISPOSITION**

The judgment is affirmed.

GOLDMAN, J.

WE CONCUR:

BROWN, P. J.
SMILEY, J. *

---

* Judge of the Superior Court of California, Alameda County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.