Filed 6/14/24  P. v. Chang CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>  v.<br><br>JASON CHANG,<br><br>        Defendant and Appellant. | C099389<br><br>(Super. Ct. No. 23FE007048) |

A jury found defendant Jason Chang not guilty of criminal threats against his brother but guilty of an attempted criminal threat.  It could not reach a verdict on the charge of assault against his sister-in-law.  On appeal, defendant argues the trial court erred in failing to give the unanimity instruction for the criminal threats charge.  He further argues the prosecutor committed misconduct when he trivialized the prosecution's

1

burden of proof.  Finally, defendant argues the cumulative impact of these two errors denied defendant due process.  We will affirm.

## I.  BACKGROUND

The amended information charged defendant with making criminal threats against A.C. (defendant's brother) and assaulting M.T. (defendant's brother's wife and defendant's sister-in-law).  (Pen. Code, §§ 422, 245, subd. (a)(1)).[1]  The information also alleged other crimes, enhancements, and aggravating factors which are not germane to the issues before us.

In May 2023, defendant was at home with his brother and his brother's wife.  The brother testified that he had schizophrenia and sometimes hears voices.  He did not remember if he was taking his medication (which reduces the symptoms) at the time of the incident, but when he must take his medication, he does so.

The wife testified while she and defendant's brother were sitting on a couch in the house, defendant came inside, was talking, and then left.  Defendant was speaking English and the wife did not understand what he was saying as she does not speak English.

The wife also testified defendant asked her if she was having an affair and hiding her boyfriend in the bedroom.  Defendant next asked if she and brother killed people and were hiding their bodies in the bedroom.  After that, defendant yelled at them to not touch defendant's children and that if anything happened to the children, the wife's and brother's "heads would explode."  Then, defendant told the couple "to stop touching his kids, and if we keep touching his kids, do we not know that our tombstone or grave is outside the house."  The wife interpreted this to mean that if defendant killed her and defendant's brother, their bodies would be buried outside the house.

---

[1] Undesignated statutory references are to the Penal Code.

2

The wife turned to her husband and said they should leave. Her husband told defendant not to come inside the house. Her husband told her to go into the bedroom and get her purse from the bedroom while he went to get a drink of water.

At trial, defendant's brother initially testified without a translator. His recollection of the events was very limited, and the prosecutor had to refresh his recollection as to many facts. He remembered defendant yelling at him and his wife. The brother initially testified defendant was not threatening him, but then testified defendant said he was going to bury the brother and wife in front of the house. He thought that comment was a joke.

When it became apparent a translator would assist the brother in testifying, the trial court obtained one and the brother testified defendant was holding a hammer and threatened the brother. The brother testified defendant said he would kill the brother, and he would beat the brother to death. These statements made the brother afraid.

The wife decided to go outside. As she headed out, defendant was standing by the door saying she stole his money and needed to give it back. The wife responded the money she had belonged to her.

The wife walked past the defendant and bent over to put on her shoes. As she was bending down, the wife noticed defendant walking behind her with a knife in his hand raised in the air over his shoulders. Defendant was about four or five feet away from her. This frightened the wife, and she ran outside.

Defendant ran after her, and his brother followed. Defendant did not have the knife outside.

The brother and his wife got into their car and drove away.

Law enforcement received a secondhand report defendant was threatening to kill family members and responded to the house. The wife informed the responding officer through her family members that a knife in a kitchen knife block was the knife defendant used.

The jury found defendant not guilty of criminal threats against the brother but found him guilty of the lesser included offense of attempted criminal threats. The jury was unable to reach a verdict on the charges of assault against the wife.

The trial court sentenced defendant to seven years in prison.

Defendant filed a timely notice of appeal.

## II. DISCUSSION

### A.    *Unanimity Instruction*

Defendant first argues the trial court erred in refusing to give the jury an unanimity instruction. Defendant suggests the jury's note asking for the wife's testimony about any threats made by defendant demonstrates an unanimity instruction should have been given. We disagree.

#### 1.    *Additional Facts*

During the jury instruction conference, the trial court noted that defense counsel was "requesting a unanimity instruction . . . [on] which statements allegedly made by [defendant] were the threats. [¶] . . . Basically, there are two separate parts to the interaction, the discussion when all of the parties are in the living room and [the brother] is on the couch, and then the parties somewhat separate. [¶] [The wife] goes into the bedroom to get ready to leave, [the brother] goes into the kitchen to get a drink of water. There is then a second interaction where [the brother] says the defendant threatened him with a hammer and made statements, and I initially thought their unanimity instruction was appropriate to make sure the jurors are all agreeing on which alleged statements were actually made, but the People are going to identify and elect to prosecute only on the alleged statements made in the second interaction when the defendant allegedly had a hammer and threatened to kill [the brother] according to [the brother's] testimony."

The prosecutor confirmed he was not basing the charge of criminal threats on any of the statements made while the brother and his wife were sitting together on the couch.

4

With that express election, the trial court concluded no unanimity instruction was required.

The trial judge prefaced the instructions to the jury by telling them the People charged defendant with the crime of criminal threats in count one and that the crime of attempting to make criminal threats would be a lesser-included offense of *that* charge. The instruction on criminal threats identified the brother as the victim. On the lesser included offense, the trial judge stated, "If all of you find that the defendant is not guilty of a greater charged crime, you may find him guilty of a lesser crime if you are convinced beyond a reasonable doubt that the defendant is guilty of that lesser crime. [¶] . . . [¶] Attempted criminal threats is a lesser crime of making a criminal threat, as charged in Count One." When it instructed the jury on the elements of attempted criminal threats, however, it did not specifically reference the brother as the victim in that instruction.

To bolster the brother's credibility in light of his schizophrenia, during his closing argument, the prosecutor told the jury that the brother witnessed the same things that his wife saw during the initial encounter. The prosecutor told the jury the victim of the criminal threats charge was the brother and tied each of the elements to the brother as the victim while defendant was holding the hammer. The prosecutor further argued the attempted criminal threat applied to the brother being the victim in this same context.

As he transitioned to discussing the charge of assault, the prosecutor said, "The act in this case, now this is with [the wife], okay? The criminal threats was with [the brother], the assault was with [the wife]." The prosecutor informed the jury this part of the case focused on the defendant with the knife raised over his head yelling at the wife.

Finally, during rebuttal, the prosecutor again told the jury, "I don't want there to be any conflation of the two, make sure we understand what are the threats, okay? Because when we're talking about [the brother], we're talking about threats, right? [Defendant] is not charged with assaulting [the brother]. He didn't assault him, right? That hammer is by his side. I can't stand up here and argue to you that having a hammer

5

by your side constitutes an assault. Of course I can't because it doesn't. [¶] But when we look at [the wife's] situation, her assault, he is not just holding it by his side. No, he took that extra step. He is holding it over his head. And contrary to [defense counsel's] beliefs, when that knife is coming up, it's coming down. And if [the wife] didn't run off as quickly as she did, we'd be talking about different crimes here. [¶] Now, I want to talk about [the wife's] crime, assault. Defendant isn't charged with making criminal threats to [the wife], why? Because [the wife] didn't understand what [defendant] was telling her, so of course I can't charge [defendant] with making threats towards [the wife]. She didn't understand. She didn't understand what was being communicated, but she was assaulted with that knife."

>    2.    *Analysis.*

We review defendant's claim of instructional error *de novo*. (*People v. Hernandez* (2013) 217 Cal.App.4th 559, 568.)

"As a general rule, when violation of a criminal statute is charged and the evidence establishes several acts, any one of which could constitute the crime charged, either the state must select the particular act upon which it relied for the allegation of the information, or the jury must be instructed that it must agree unanimously upon which act to base a verdict of guilty." (*People v. Jennings* (2010) 50 Cal.4th 616, 679.) As relevant here, "[w]hen an accusatory pleading charges the defendant with a single criminal act, and the evidence presented at trial tends to show more than one such unlawful act, either the prosecution must elect the specific act relied upon to prove the charge to the jury, or the court must instruct the jury that it must unanimously agree that the defendant committed the same specific criminal act." (*People v. Melhado* (1998) 60 Cal.App.4th 1529, 1534.) " 'The prosecution can make an election by "tying each specific count to specific criminal acts elicited from the victims' testimony"—typically in opening statement and/or closing argument. [Citations.] . . . [Citation.] [¶] Under these principles, there is an implicit presumption that the jury will rely on the prosecution's

6

election and, indeed, is bound by it.' " (*People v. Brugman* (2021) 62 Cal.App.5th 608, 627.)

Here, the prosecutor made the required election in front of the trial court and repeatedly informed the jury of the conduct it relied upon for the prosecution of the criminal threats charge. To this end, the prosecutor argued it was the statements defendant made that he would kill or unlawfully cause great bodily injury to the brother. The prosecutor said the threats occurred when defendant "was holding that hammer, he was standing next to [the brother], and he told him, 'I'm going to squeeze the life out of you, I'm going to bury your body, I'm going to kill you.' " He made the same arguments in the context of the attempted threats charge.

Moreover, the prosecutor disavowed any reliance on the statements made while the brother was on the couch with his wife as supporting this count. The prosecutor pointed out the assault charge was based upon defendant's knife brandishing and was separate and apart from the criminal threats charge and based on different conduct. The prosecutor's request that the jury compare the brother's testimony with his wife's testimony, to show that the brother's testimony was reliable, did not create any ambiguity as to the prosecutor's election. The fact the jury requested a readback of the wife's testimony about any threats made by defendant did not undermine the People's election.

Defendant's reliance on *People v. Melhado, supra,* 60 Cal.App.4th 1529, as a grounds for reversal here is misplaced. There, the defendant was charged with making terrorist threats to an auto repair shop owner. (*Id.* at pp. 1532-1533.) The defendant visited the shop at 9:00 a.m. and then again at 11:00 a.m., making threats each visit and carrying what appeared to be an operable grenade during the second visit. (*Id.* at p. 1533.) Outside the jury's presence, the prosecutor elected to rely on the 11:00 a.m. incident for the terrorist threats charge. (*Id.* at p. 1535.) During closing argument, however, the prosecutor discussed both incidents, emphasizing the 11:00 a.m. incident, but never explicitly informing the jury of his election. (*Id.* at p. 1536.) The trial court did

not give an unanimity instruction. (*Id*. at p. 1532.) The appellate court reversed, concluding that the trial court should have instructed on unanimity because each incident was sufficient to establish criminal liability and the prosecutor failed to clearly communicate to the jury which incident it should consider as the basis for conviction. (*Id.* at pp. 1536-1539.) Here, the prosecutor told the jury of the People's election and appropriately focused the jury on the relevant facts.

This prosecutor's election did not become ambiguous because the victim's name was included in the criminal threats instruction but not in the attempted threats instruction. The trial court's instructions to the jury provided that this charge only applied if they found defendant not guilty of criminal threats. Further, the prosecutor's argument that this charge applied only to the brother informed the jury that this charge only applied to the acts against the brother.

We conclude no unanimity instruction was required here.

B.     *Prosecutorial Misconduct*

Defendant contends the prosecutor's closing argument trivialized the reasonable doubt standard. We disagree.

"Advocates are given significant leeway in discussing the legal and factual merits of a case during argument. [Citation.] However, 'it is improper for the prosecutor to misstate the law generally [citation], and particularly to attempt to absolve the prosecution from its . . . obligation to overcome reasonable doubt on all elements.' " (*People v. Centeno* (2014) 60 Cal.4th 659, 666.)

Defendant takes issue with the following statement the prosecutor made during his rebuttal argument: "So I want to talk about the burden of proof, okay? The standard of proof, beyond a reasonable doubt. Because [defense counsel] talked about as she went over all these other standards, you know, we saw her walk over there, come back, and she told you it was the highest burden, right? [¶] Well, members of the jury, all those other standards she talked about, those are all irrelevant for our purposes. The standard that

applies in this case is beyond a reasonable doubt. [¶] And she said it was the highest burden, right? . . . But it is also a standard of proof we use in every case, in every criminal case throughout the United States, whether you're charged with a suspended license or all the way up to murder. This isn't some scary unobtainable standard, right?"

*People v. Nguyen* (1995) 40 Cal.App.4th 28 (*Nguyen*) is instructive on this point. In *Nguyen*, the prosecutor argued: " 'The standard is reasonable doubt. That is the standard in every single criminal case. And the jails and prisons are full, ladies and gentlemen. [¶] It's a very reachable standard that you use every day in your lives when you make important decisions, decisions about whether you want to get married, decisions that take your life at stake when you change lanes as you're driving. If you have reasonable doubt that you're going to get in a car accident, you don't change lanes. [¶] So it's a standard that you apply in your life. It's a very high standard. And read that instruction, too. I won't paraphrase it because it's a very difficult instruction, but it's not an unattainable standard. It's the standard in every single criminal case.' " (*Id.* at p. 35.)

The appellate court held that this argument was misconduct because it "trivialize[d] the reasonable doubt standard." (*Nguyen, supra*, 40 Cal.App.4th at p. 36.) The court explained: "It is clear the almost reflexive decision to change lanes while driving is quite different from the reasonable doubt standard in a criminal case. The marriage example is also misleading since the decision to marry is often based on a standard far less than reasonable doubt . . . ." (*Ibid*.) It concluded: "We strongly disapprove of arguments suggesting the reasonable doubt standard is used in daily life to decide such questions as whether to change lanes or marry." (*Ibid.*)

We conclude a juror would not construe the prosecutor's reference to the suspension of a license to be the administrative DMV proceedings as argued by defendant. Rather, the prosecutor's statement was that the reasonable doubt standard was the proper standard, and it is the standard used in every criminal case in the United States. In context, a jury would have understood the prosecutor to be referring to criminal cases

9

for the suspension of a driver's license where reasonable doubt is the proper standard. Moreover, unlike the *Nguyen* prosecutor, this prosecutor did not suggest this standard was the one people use in their everyday decisions. We conclude there is no prosecutorial misconduct here.

C. *Cumulative Error*

Defendant argues the cumulative effect of the jury instruction error and the prosecutorial misconduct necessitate reversal. "There was, however, no error to cumulate." (*People v. Phillips* (2000) 22 Cal.4th 226, 244.)

### III. DISPOSITION

The judgement is affirmed.


/S/

_____
    RENNER, J.



We concur:


/S/

_____
HULL, Acting P. J.


/S/

_____
FEINBERG, J.