Filed 8/9/21  P. v. Contreras CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>GILBERT R. CONTRERAS,<br><br>    Defendant and Appellant. | D078372<br><br><br><br>(Super. Ct. No. FWV19001048) |

APPEAL from a judgment of the Superior Court of San Bernardino County, Ingrid Adamson Uhler, Judge.  Affirmed.

Allison H. Ting, under appointment by the Court of Appeal, for Defendant and Appellant.

Matthew Rodriguez, Acting Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Robin Urbanski and Charles C. Ragland, Deputy Attorneys General for Plaintiff and Respondent.

When his step-granddaughter (Jane Doe)[1] was ages five through 11, defendant Gilbert Contreras sexually molested her hundreds of times by licking her vagina, touching her vagina with his hand, and kissing her on the lips and inserting his tongue into her mouth. Contreras was charged with a pair of sex offenses—orally copulating a minor (Pen. Code,[2] §§ 288.7, subd. (b), 287, subd. (c)(1)) and committing a lewd act on a child under 14 (§ 288, subd. (a))—for each of the seven years he molested Jane Doe. The jury found him guilty on all 14 counts, and the trial court sentenced him separately on each count, imposing a determinate term of 20 years, and an indeterminate term of 90 years to life.

On appeal, Contreras contends the sentences on his lewd act convictions must be stayed under section 654 because those "convictions could have been based on the same acts of oral copulation underlying" his oral copulation convictions. We disagree. The prosecutor made a clear election during closing argument to base the oral copulation counts on Contreras licking Jane Doe's vagina, and the lewd act counts on him touching her vagina with his hand or kissing her on the lips and inserting his tongue into her mouth. The court gave the jury a unanimity instruction, and a jury question during deliberation indicates the jury understood the lewd act counts pertained only to the touching and kissing.

Accordingly, we affirm the judgment.

---

[1]    The trial court ordered that the victim be referred to as "Jane Doe." To protect her privacy, we will also refer to her in this manner. (See Cal. Rules of Rule, rule 8.90(b)(4).)

[2]    All further statutory references are to the Penal Code.

# I. FACTUAL AND PROCEDURAL BACKGROUND

## A. Prosecution Case

In 2012, when Jane Doe was four years old, her parents separated and she moved with her mother (Mother) and brother from Texas to Monrovia, where they moved in with Mother's biological mother (Grandmother) and stepfather (Contreras). Jane Doe lived with her grandparents in Monrovia from 2012 to 2014.

One day when Jane Doe was five, she told Contreras she heard the word "sex" at school, and asked him what it meant. Contreras replied, " 'Let me show you.' " He licked her vagina and touched her vagina with his hand. He told her, "Don't tell anybody, this is our little secret." Jane Doe testified that while she lived with her grandparents in Monrovia, when she was five and six years old, Contreras licked her vagina and touched her vagina with his hand 100 times. He also kissed her on the lips and inserted his tongue into her mouth.

In 2014, Mother remarried and moved with her children to Signal Hill to live with her new husband. A few months later, Contreras and Grandmother moved to a new home in the Rancho Cucamonga area. Jane Doe visited the grandparents several times per month, often sleeping over on weekends. Jane Doe testified that while her grandparents lived near Rancho Cucamonga, when she was ages seven and eight, Contreras licked her vagina and touched her vagina with his hand 50 times. He also kissed her on the lips and inserted his tongue into her mouth when she was seven, but not when she was eight (she did not know why he stopped).

A few years later, Contreras and Grandmother moved to Ontario. Jane Doe continued visiting them and sleeping over some weekends. She testified that while her grandparents lived in Ontario, when she was ages 9, 10, and

11, Contreras licked her vagina and touched her vagina with his hand 100 times. He also resumed kissing her on the lips and inserting his tongue into her mouth when she was each of these ages.

Jane Doe disclosed the molestation to Mother, who reported it to the police. During a police interview, Contreras eventually admitted he touched Jane Doe's vagina five or six times, and further admitted he and Jane Doe were sometimes sexually stimulated by it. He denied he ever licked Jane Doe's vagina, but admitted he kissed her bellybutton once.

### B. Defense Case

Contreras did not testify in his defense. His only witness was a defense investigator who testified that her communications with Grandmother during the investigation cast doubt on Grandmother's and Mother's credibility.

### C. Charges, Verdicts, and Sentence

Contreras was charged with seven counts of oral copulation on a minor (§§ 288.7, subd. (b), 287, subd. (c)(1); counts 1, 3, 5, 7, 9, 11, and 13),[3] and seven counts of committing a lewd act on a child under 14 (§ 288, subd. (a); counts 2, 4, 6, 8, 10, 12, and 14). The charges consisted of one count of oral copulation and one count of committing a lewd act for each of the seven years during which Contreras molested Jane Doe.

The jury found Contreras guilty on all counts.

The trial court sentenced Contreras to a determinate term of 20 years, consisting of the six-year midterm under section 288, subdivision (a) on the principal lewd act conviction (count 2); 12 years on the six remaining lewd act

---

[3]     Six of these counts (1, 3, 5, 7, 9, and 13) were charged under section 288.7, subdivision (b), which applies when the victim is 10 or younger. The remaining count (count 11) was charged under section 287, subdivision (c)(1), which applies when the victim is under 14 and more than 10 years younger than the perpetrator.

convictions (one-third of the six-year midterm, i.e., two years, on each of counts 4, 6, 8, 10, 12, and 14); and two years (one-third of the six-year midterm) on the oral copulation conviction under section 287, subdivision (c)(1).

The trial court sentenced Contreras to an indeterminate term of 90 years to life, consisting of 15-to-life terms on each of the six oral copulation convictions under section 288.7, subdivision (b).

## II.  DISCUSSION

Contreras contends the sentences on his lewd act convictions must be stayed under section 654 because those "convictions could have been based on the same acts of oral copulation underlying" his oral copulation convictions. We disagree.

## A.  Background

Although Jane Doe testified in some detail about a few specific occasions on which Contreras molested her, she testified more generally that "he would do the same thing every single time"—lick her vagina, touch her vagina with his hand, and kiss her on the lips and insert his tongue into her mouth.

At the outset of her closing argument, the prosecutor gave "a brief overview of the charges . . . to break it down kind of simply for [the jury]." She began by explaining how the count numbers relate to Jane Doe's age: "Essentially, we have charged the defendant with one count of oral copulation and one count of a lewd act on a child for every single year of Jane Doe's life from 5, 6, 7, 8, 9, 10, and 11."

The prosecutor then explained how Contreras's conduct related to the charges:

> "So what are we talking about?  What I'm talking about, these specific acts.  Oral copulation is the licking of Jane

5

Doe's vagina. Okay. That is exactly what we mean by oral copulation. . . .

"And then the lewd act could have actually been multiple acts that Jane Doe testified to that could constitute the lewd act upon a child. That would be this kissing that she described where the defendant is shoving his tongue in her mouth, or trying to each time he even tried. And then, also, the touching and rubbing of Jane Doe's vagina. Okay."

Next, the prosecutor addressed why there were only 14 counts, when Jane Doe alleged hundreds of incidents:

"We charged only one count for these acts per year because Jane Doe can't tell us exactly how many times it happened every single year. She can't tell you exactly how many times per month. [¶] . . . [¶] I only have to prove to you that it happened once each year of her life during that time period for each count."

Then, because Jane Doe described more incidents than there were counts, the prosecutor explained the significance of the unanimity instruction (CALCRIM No. 3501):[4]

" 'Unanimity.' Okay. That means it doesn't have to specifically do with the lewd acts upon a child. Okay. Because there are multiple, possible lewd acts, you all always have to have a unanimous verdict, right?

---

[4] The trial court instructed the jury regarding unanimity with CALCRIM No. 3501. As given, the instruction began by listing the 14 counts by number, charge, and date range. The instruction then stated: "The People have presented evidence of more than one act to prove that the defendant committed these offenses. You must not find the defendant guilty, unless: [¶] 1) You all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act he committed for each offense; [¶] OR [¶] 2) You all agree that the People have proved that the defendant committed all these acts alleged to have occurred during the specified time periods and have proved that the defendant committed at least the number of offenses charged."

"So for the oral copulation count, you all have to unanimously agree that that crime was proved, that the defendant did orally copulate Jane Doe once each year of her life to get . . . all the odd numbered . . . counts 1 through 13, essentially.

"But for the lewd act upon a child, since she talks about two different types of lewd acts, we could have actually charged two different counts of lewd acts for each year. Well, we didn't. We just made it simple. One count of lewd act that could constitute basically either of those different acts, which is kissing or the touching of her vagina.

"But what the unanimity instruction says, that when you're looking at each individual count for the lewd act charges, that's all the even numbered ones, you all have to agree— not only agree to the crimes proven, all those elements, but you all have to agree on which act you believe happened. Okay."

The prosecutor illustrated the unanimity concept with a hypothetical example:

"So let's just say for Count 2, . . . half of you agree that . . . a lewd act happened, but . . . believe it was kissing. And the other half of you believe . . . a lewd act happened, but . . . believe that it was just the touching of the vagina. There's no unanimity. Your verdict is not then unanimous. You cannot find him guilty on those specific counts."

In discussing the elements of the charged offenses, the prosecutor noted that the lewd act offense contains the additional element that Contreras must have acted "with the intent of arousing" himself or Jane Doe "when he was actually touching or kissing" her. The prosecutor argued the jury could use the fact Contreras licked Jane Doe's vagina as circumstantial evidence that when he touched her vagina with his hand he did so with the intent to arouse.

The prosecutor also addressed a jury instruction that allowed jurors to use certain of the charged offenses they found to be true as propensity

7

evidence that Contreras committed other charged offenses. (See CALCRIM No. 1191B.) Specifically, she argued "you're allowed to use the oral copulation as evidence, circumstantially to show that he committed these other sex acts, too."

Defense counsel similarly distinguished between the oral copulation and lewd act counts during her closing argument. Regarding Contreras's admissions during his police interview, she stated: "[H]e'll admit to some touching, but he won't, you know, admit to the licking. How does he know that a touch is a different charge than a lick . . . ? He does admit to touching her five to six times."

Defense counsel reiterated during closing argument that Contreras never admitted during the police interview that he licked Jane Doe's vagina: "[W]hen the detective is talking to him about the licking, there's no budge. [¶] . . . [¶] And so Mr. Contreras is absolutely not guilty of all of the counts of oral copulation. He does not ever admit to licking her. Not ever admits to putting any part of his mouth on her vagina. He admits to touching her vagina, which is a 288(a) [lewd act], five to six times."

During deliberation, the jury submitted the following question to the court about the unanimity requirement for the lewd act counts:

> "PC section 288(a) Do we have to vote on each act[?] Touching? Kissing? Does the jury have to agree both Touching & Kissing? Or if the jury agrees on Touching is that enough to find the defendant guilty of the specific count? [¶] Do we have to report back to the court how we came to our decision?"

With counsel's concurrence, the court referred the jury to the instructions regarding unanimity and the elements of the section 288 offense. The court explained to counsel out of the jury's presence that it took this approach because it "didn't want to talk about touching or kissing because it's

8

up to [the jury] to determine whether or not that actually is within the elements" of section 288, subdivision (a).

Later, as noted, the jury found Contreras guilty on all counts.

At the sentencing hearing, defense counsel asked the court to impose concurrent sentences. She noted that each pair of oral copulation and lewd act counts covered conduct "for the same time frame," so she "ask[ed] the Court to find those counts merge for purposes of sentencing." The court responded that "there was generic testimony that there was repeated conduct during that time frame that . . . would be separate incidents" allowing for consecutive sentencing. The court thus found section 654 "does not apply to the different count[s]."

The court then sentenced Contreras to a 20-year determinate term, and a 90-to-life indeterminate term.

### B. Legal Principles

"[M]ultiple sex acts committed on a single occasion can result in multiple statutory violations" because "[s]uch offenses are generally 'divisible' from one another . . . and separate punishment is usually allowed." (*People v. Scott* (1994) 9 Cal.4th 331, 344, fn. 6 (*Scott*); see *id.* at pp. 346, 348 ["Each individual act that meets the requirements of section 288 can result in a 'new and separate' statutory violation"; thus defendant was properly convicted of two violations of § 288 where he "fondled an intimate part of [victim]'s body and also had sexual intercourse with her" during a single encounter]; *People v. Booth* (2018) 25 Cal.App.5th 450, 452 (*Booth*) [trial court had discretion to impose consecutive sentences for multiple oral copulation convictions].)

However, section 654 bars multiple punishments when multiple convictions arise from a single "act or omission that is punishable in different ways by different provisions of law." (§ 654, subd. (a).) Thus, although a

9

single act may give rise to multiple *convictions* under different statutes, a single act may not give rise to multiple *punishments*. (See *People v. Correa* (2012) 54 Cal.4th 331, 336.) "[W]hen a court determines that a conviction falls within the meaning of section 654, it is necessary to impose sentence but to stay the execution of the duplicative sentence." (*People v. Duff* (2010) 50 Cal.4th 787, 796, italics omitted.)

"In a criminal case, a jury verdict must be unanimous," and "the jury must agree unanimously the defendant is guilty of a *specific* crime." (*People v. Russo* (2001) 25 Cal.4th 1124, 1132; see *People v. Brugman* (2021) 62 Cal.App.5th 608, 627 (*Brugman*).) "Therefore, cases have long held that when the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act." (*Russo*, at p. 1132; see *Brugman*, at p. 627.) " 'The prosecution can make an election by "tying each specific count to specific criminal acts elicited from the victims' testimony"—typically in opening statement and/or closing argument. [Citations.] [¶] Under these principles, there is an implicit presumption that the jury will rely on the prosecution's election and, indeed, is bound by it.' " (*Brugman*, *supra*, 62 Cal.App.5th at p. 627.) "If the prosecution is to communicate an election to the jury, its statement must be made with as much clarity and directness as would a judge in giving instruction. The record must show that by virtue of the prosecutor's statement, the jurors were informed of their duty to render a unanimous decision as to a particular unlawful act." (*People v. Melhado* (1998) 60 Cal.App.4th 1529, 1539; see *Brugman*, at p. 629.)

10

## C. Analysis

Based on our thorough review of the record, we are satisfied that the jury did not base Contreras's lewd act convictions on the same acts of oral copulation on which it based his oral copulation convictions.

First, the prosecutor clearly elected to base the oral copulation counts only on Contreras licking Jane Doe's vagina, and the lewd act counts only on Contreras touching Jane Doe's vagina with his hand or kissing her on the lips and inserting his tongue into her mouth. Indeed, the prosecutor began her closing argument by saying so: "So what are we talking about? What I'm talking about, these specific acts. Oral copulation is the licking of Jane Doe's vagina. [¶] . . . [¶] And then the lewd act could have actually been multiple acts that Jane Doe testified to . . . . That would be this kissing . . . , [a]nd then, also, the touching and rubbing of Jane Doe's vagina."

The prosecutor reiterated the point when explaining the unanimity instruction to the jury. She first explained that the jury had to unanimously agree that one count of oral copulation had been established for each year. By contrast, when addressing the lewd act counts, the prosecutor explained that the jury had to unanimously agree on what underlying conduct constituted the lewd act, which "could constitute basically either of those different acts, which is kissing or the touch of her vagina." She punctuated this point by providing a hypothetical scenario in which all jurors believed Contreras committed a lewd act, but half believed it was the kissing, and the other half believed it was the touching. The prosecutor never mentioned the licking of Jane Doe's vagina in this context.

The prosecutor further distinguished between the underlying conduct when explaining the concepts of propensity evidence and specific intent. As to propensity, she explained that jurors could use the fact that Contreras

11

committed oral copulation with Jane Doe as circumstantial evidence that he likewise committed lewd acts on her. And as to specific intent, the prosecutor argued jurors could use the fact that Contreras licked Jane Doe's vagina—which surely must have been done for sexual stimulation or gratification—as circumstantial evidence that he harbored a similar specific intent when touching her vagina with his hand or kissing her on the lips and inserting his tongue into her mouth.

Second, defense counsel's closing argument reinforced the prosecutor's election. Defense counsel acknowledged that "touching" and "licking" give rise to different charges, and Contreras "admits to touching her vagina, which is a 288(a)" lewd act, "but he won't, you know, admit to the licking."

Finally, the jury's question during deliberation indicates the jury understood the prosecutor's election. The question addressed the scope of section 288, and focused entirely on "Touching" and "Kissing"—it made no mention of licking.

The record thus demonstrates the jury understood the lewd act counts were based only on Contreras touching Jane Doe's vagina with his hand or kissing her on the lips and inserting his tongue into her mouth, and not on licking her vagina.

The cases on which Contreras relies are of no assistance to him because it was clear in each of them that the defendant's convictions on multiple counts were based on the same underlying conduct. (See *People v. Siko* (1988) 45 Cal.3d 820, 826 [section 654 prevented separate punishments for rape, sodomy, and lewd acts where "the charging instrument and the verdict both identify the lewd conduct as consisting of the rape and the sodomy rather than any other act"]; *People v. Alvarez* (2009) 178 Cal.App.4th 999, 1007 ["it is clear that section 654 does apply to . . . two counts of forcible lewd

12

conduct [because they] were based on the very same acts of digital penetration which formed the basis for the two counts of aggravated sexual assault"].) By contrast, the record here shows that the prosecutor elected to base the oral copulation and lewd act counts on different underlying conduct, and the jury understood this election. Accordingly, *Siko* and *Alvarez* are inapposite. (See *People v. Ashmus* (1991) 54 Cal.3d 932, 1011 [distinguishing *Siko* on the basis the *Siko* court was "able to conclude that the lewd conduct consisted solely of the rape and sodomy"].)

Because Contreras's oral copulation and lewd act convictions were based on separate underlying acts, section 654 did not preclude separate punishments for those acts. (See *Scott*, *supra*, 9 Cal.4th at p. 344, fn. 6; *Booth*, *supra*, 25 Cal.App.5th at p. 452.)

### DISPOSITION

The judgment is affirmed.

HALLER, J.

WE CONCUR:


McCONNELL, P. J.


AARON, J.

13