Filed 3/1/22  P. v. Pittman CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CLYDE OZELL PITTMAN,<br><br>    Defendant and Appellant. | 2d Crim. No. B310483<br>(Super. Ct. No. KA124007)<br>(Los Angeles County) |

Clyde Ozell Pittman appeals the judgment entered after a jury convicted him of arson of a structure (Pen. Code,[1] § 451, subd. (c)) and making criminal threats (§ 422, subd. (a)). In a bifurcated proceeding, appellant admitted that he had a prior strike and serious felony conviction (§§ 667, subds. (a)-(j), 1170.12, subd. (b)). The trial court sentenced him to an aggregate term of nine years and four months in state prison, consisting of the midterm of four years for the arson doubled for the strike prior, plus sixteen months (one-third the midterm

---

[1] All statutory references are to the Penal Code.

doubled) for the criminal threat.  Appellant contends the court erred in failing to give a unanimity instruction (CALCRIM No. 3500) on the criminal threats count, and in accepting the jury's verdict in appellant's absence rather than granting a continuance.  We affirm.

## FACTS AND PROCEDURAL HISTORY

At about 5:30 p.m. on January 27, 2020, appellant's mother Genevieve Urzua was at home with her husband when she saw a bright light around her front door.  Urzua opened the door and saw flames.  She closed the door, called 911, and left the house through the back door.  Neighbors helped her extinguish the fire with a garden hose.

Los Angeles County Sheriff's Detective Alex Miller went to Urzua's residence in response to the 911 call.  The front door and door frame were charred and there was a partially filled gas can on the front lawn.  Based on his training and experience, Detective Miller concluded that the fire was deliberately started.  When interviewed, Urzua and her husband said they had no idea who might have started the fire.

The following morning, Urzua spoke with appellant on the telephone and asked him "why did you try to burn me?" Appellant replied with a text stating, "That's what you get.  You didn't learn." At 3:34 p.m. that afternoon, appellant sent Urzua text messages stating "Identity theft is hard, but I'm in your backyard" and "I'm coming for you G. . . . asleep, please or at work."[2]  At 3:48 p.m., appellant You fucked up.  Coming for you" and "sleeping."  At 4:12, he texted "You all die."

Urzua called Detective Miller and left a voicemail stating that appellant had essentially admitted starting the fire and was

---

[2] "G" and "Gina" referred to appellant's sister Legina.

2

sending her text messages threatening to harm her and her family. Urzua urged the detective not to "wait til (*sic.*) another burn of some kind happens or somebody is killed" and added that appellant "needs to get off the streets and get mental health." When Detective Miller spoke to Urzua on the phone, she was extremely upset and agitated and said something to the effect "I'm afraid he's going to do something to me or the family. He's going to harm me or light another fire." Appellant was subsequently located and arrested.

## DISCUSSION

### *Unanimity Instruction (CALCRIM No. 3500)*

Appellant contends the trial court prejudicially erred in failing to give a unanimity instruction (CALCRIM No. 3500)[3] on the criminal threats charge. We are not persuaded.

"[C]ases have long held that when the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act." (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.) "'The prosecution can make an election by "tying each specific count to specific criminal acts elicited from the victims' testimony"—typically in opening statement and/or closing argument. [Citations.] [¶] Under these principles, there is an implicit presumption that the jury will rely on the prosecution's election and, indeed, is bound by it.' [Citation.]" (*People v. Brugman* (2021) 62 Cal.App.5th 608, 627.)

---

[3] CALCRIM No. 3500 states: "The People have presented evidence of more than one act to prove that the defendant committed the offense. You must not find the defendant guilty unless you all agree . . . on which act (he/she) committed."

A trial court has a sua sponte duty to give a unanimity instruction when "'there is a risk the jury may divide on two discrete crimes and not agree on any particular crime.'" (*People v. Covarrubias* (2016) 1 Cal.5th 838, 878.) There are exceptions to this rule. As relevant here, no unanimity instruction is required if the case falls within the continuous-course-of-conduct exception, which "arises in two contexts. [Citation.] "'The first is when the acts are so closely connected that they form part of one and the same transaction, and thus one offense. [Citation.] The second is when . . . *the statute* contemplates a continuous course of conduct of a series of acts over a period of time.'"'" (*People v. Hernandez* (2013) 217 Cal.App.4th 559, 572.) There also is no need for a unanimity instruction if "'the defendant offered the same defense to both acts constituting the charged crime, so no juror could have believed defendant committed one act but disbelieved that he committed the other, or because "there was no evidence from which the jury could have found defendant was guilty of" the crime based on one act but not the other.'" (*Covarrubias*, at p. 879, citing *People v. Davis* (2005) 36 Cal.4th 510, 562.)

Here, the prosecutor repeatedly told the jury during closing argument that the criminal threats charge was based on appellant's text messages to Urzua stating "You fucked up. I'm coming for you" and "You will die." Moreover, these statements formed a continuous course of conduct because they were all made over the course of 24 minutes. (Compare *People v. Melhado* (1998) 60 Cal.App.4th 1529, 1535-1536 [unanimity instruction required in criminal threats case where defendant made threatening statements two hours apart and the prosecutor did not expressly elect either act as basis for charge].) Appellant also

4

offered the same defense for each statement, i.e., that he did not intend for the statements to be taken as threats and that Urzua was not placed in fear by them. Finally, there was no evidence from which the jury could have found appellant guilty of making criminal threats based on one of the statements but not the others.

In asserting otherwise, appellant misplaces his reliance on *People v. Salvato* (1991) 234 Cal.App.3d 872. The court in that case considered whether a unanimity instruction was required where the defendant made a series of criminal threats against the victim over a period of 16 months and through a variety of media. Factually, the threats did not comprise a continuous course of conduct because they were separated in time and different in kind. The *Salvato* court considered whether the criminal threats statute itself defined the offense as one involving a continuous course of conduct and determined that the statute refers to a single act taken at a particular moment in time. (*Id.* at pp. 882-883.) The court concluded the trial court should have required the prosecution to elect a particular threat on which it relied to prove the offense. (*Id.* at p. 884.)

*Salvato* is inapposite because appellant's threatening statements occurred twenty-four minutes apart on a single day. Because the statements were so closely connected, they comprised a continuous course of conduct. (*Salvato*, *supra*, 234 Cal.App.4th at p. 882.) Moreover, the prosecutor repeatedly identified the statements upon which the criminal threats charge was based. A unanimity instruction was thus not required. Because appellant offered the same defense to each of his statements and the jury plainly rejected that defense, any error in failing to give the instruction was also harmless beyond a

5

reasonable doubt.  (*People v. Covarrubias*, *supra*, 1 Cal.5th at pp. 879-880; *People v. Wolfe* (2003) 114 Cal.App.4th 177, 185-188.)[4]

### *Receiving Of Verdict In Appellant's Absence*

Appellant also contends the court violated his statutory and constitutional rights by accepting the jury's verdict in appellant's absence rather than granting a continuance.  We disagree.

Criminal defendants have a right to be personally present at certain pretrial proceedings and at trial under various provisions of law, including the confrontation clause of the Sixth Amendment to the United States Constitution, the due process clause of the Fourteenth Amendment to the United States Constitution, and section 15 of article I of the California Constitution.  (*People v. Cole* (2004) 33 Cal.4th 1158, 1230.)  More specifically, a defendant has a "constitutional right to be present at all critical stages of the criminal prosecution, i.e., 'all stages of the trial where his absence might frustrate the fairness of the proceedings' [citation], or 'whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge.'"  (*People v. Rodriguez* (1998) 17 Cal.4th 253, 260.)

Our Supreme Court has recognized, however, that the right to be present is not without limits.  For example, "'[u]nder the Sixth Amendment's confrontation clause, a criminal defendant does not have a right to be personally present at a particular

---

[4]  Appellant also asserts that "neither . . . continuous course of conduct exception remains valid" in light of *Ramos v. Louisiana* (2020) __ U.S. __, 140 S.Ct. 1390 [206 L.Ed.2d 583], which held that the Sixth Amendment's right to a jury trial requires a unanimous verdict in both state and federal court. Suffice to state that nothing in *Ramos* supports such an assertion.

proceeding unless his appearance is necessary to prevent "interference with [his] opportunity for effective cross-examination."'" (*People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 1039 (*Lewis and Oliver*).) "'[U]nder the Fourteenth Amendment's due process clause, a criminal defendant does not have a right to be personally present at a particular proceeding unless he finds himself at a "stage . . . that is critical to [the] outcome" and "his presence would contribute to the fairness of the procedure." [Citation.]'" (*Ibid.*) Under the California Constitution, "'a criminal defendant does not have a right to be personally present "[for] matters as to which [his] presence does not bear a ""reasonably substantial relation to the fullness of his opportunity to defend against the charge."""' [Citations.]" (*Ibid.*) Moreover, California statutory law expressly provides that a verdict in a felony trial may be received in the defendant's absence in the interest of justice. (§ 1148; *Lewis and Oliver*, at pp. 1039-1040.)

When the jury reached its verdict on November 23, 2020, appellant was in COVID quarantine at the county jail. The court stated: "[Defense counsel] is suggesting that we bring the jury back for December 7th . . . in hopes that [appellant] will be definitely available on that date. . . . The issue is determining whether or not our jurors will be available on December 7th for purposes of unsealing the verdict, and if one or two are unavailable, then we may have to reevaluate our options."

After the jury confirmed it had reached a verdict, the verdict was delivered to the court and sealed. The court then asked the jurors and alternates "is there anyone amongst you going to be unavailable . . . on December 7th for a morning session." Juror No. 7 replied that he "ha[d] reservations to be in

7

Virginia at that time" and would not be returning until "[m]id January."

After discussing the matter with counsel outside the jury's presence, the court stated: "I think what I'm going to do is go ahead and take the verdict in the absence of [appellant]; although I still find that it is a critical stage, he definitely has a constitutional right to be present. But the fact of the matter is that the jury has decided the case. . . . [Appellant], through no fault of his own, is unavailable, but the court cannot see its way clear to delaying this verdict into January of next year so all deliberating jurors . . . quite frankly, I don't know if all deliberating jurors will be available even in January when we would have to reunite; so I'm going to just go ahead and bite the bullet and make that decision . . . ." The court also reasoned that waiting until January to read the verdict created a "danger . . . , in the event [appellant] is acquitted by this jury, that he would definitely be seriously over detained in custody."

The court did not err. Receiving the verdict in appellant's absence was proper because "a delay in announcing the verdict might have disrupted the proceedings or resulted in the loss of jurors." (*Lewis and Oliver*, *supra*, 39 Cal.4th at p. 1040.) Moreover, "[t]he court risked 'exacting a heavy toll' on the jury if it had to wait for an uncertain or extended period to deliver its verdict." (*Ibid.*)

In any event, any error in receiving the verdict in appellant's absence would not compel reversal. As we have noted, criminal defendants have no right to be present for matters at which their presence does not bear a substantial relationship to the fullness of their opportunity to defend against the crimes with which they are charged. (*Lewis and Oliver*,

8

*supra*, 39 Cal.4th at p. 1039.)  There was no such relationship here because the jury had reached a verdict and nothing remained but for it to be read.  As the People put it, "appellant's opportunity to defend against the charges was already over by the time the jury had completed deliberations."  Accordingly, any error in receiving the verdict in appellant's absence was harmless regardless of the standard of review.[5]

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.

PERREN, J.

We concur:

YEGAN, Acting P.J.

TANGEMAN, J.

---

[5] For the first time on appeal, appellant also claims the court erred in failing to consider the possibility that appellant might be able to appear virtually for the reading of the verdict. This claim was not raised below so it is forfeited.  In any event, nothing in the record indicates that such an appearance would have been feasible given that appellant was under a COVID quarantine.

Mike Camacho, Jr., Judge
Superior Court County of Los Angeles
_____

Aurora Elizabeth Bewicke, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, and David E. Voet, Deputy Attorney General, for Plaintiff and Respondent.