Filed 12/23/22  P. v. Julian CA2/6
**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CODY ADAM JULIAN,<br><br>    Defendant and Appellant. | 2d Crim. No. B313374<br>(Super. Ct. No. 17F-11660)<br>(San Luis Obispo County) |

Cody Adam Julian appeals a judgment following his conviction in a retrial of committing lewd acts on a child (Pen. Code,[1] § 288, subd. (a)) (counts 1-4) and sexual penetration of a child under the age of 10 (§ 288.7, subd. (b)) (count 5).  For counts 1 through 4, the trial court sentenced him to an aggregate nine years in prison plus a 15-year-to-life sentence on count 5.  We conclude, among other things, that:  1) the trial court did not err by admitting evidence of "child abuse interdisciplinary team"

---

[1] All statutory references are to the Penal Code unless otherwise stated.

(CAIT) interviews with the child victim; 2) Julian has not shown ineffective assistance of counsel; 3) substantial evidence supports the convictions on count 4 (a lewd act on the child in a recreational vehicle (RV)) and on count 5 (sexual penetration of the child in an RV); 4) the court erred by giving a unanimity instruction on count 5 but the error was not prejudicial; 5) the court erred by not giving a unanimity instruction on count 3 (a lewd act near a tree); and 6) the abstract of judgment does not reflect Julian's presentence custody credits. We reverse the conviction on count 3 and remand for resentencing and correction of the abstract of judgment. In all other respects, we affirm.

FACTS

A jury convicted Julian of four counts of lewd acts upon a child (§ 288, subd. (a)) and one count of sexual penetration of a child under 10 years of age (§ 288.7, subd. (b)). In 2019, we reversed these convictions and remanded the case for a new trial because the trial court had admitted highly prejudicial expert testimony. (*People v. Julian* (2019) 34 Cal.App.5th 878, 885.)

On retrial, the People alleged that counts 1 and 2 involved Julian's lewd conduct with the child when they were near a truck. Count 3 involved a lewd contact near a tree. Count 4 involved Julian's lewd touching in an RV. Count 5 involved his sexual penetration of the child when they were in an RV.

B., then a 13-year-old girl, testified that Julian had committed lewd acts on her when they were alone. Julian lived with B. and her sisters. B. reported Julian's sexual abuse. She appeared at four interviews with police and a CAIT interviewer where she described Julian's actions. Julian's defense counsel objected to the admission of CAIT interview 3. The trial court

2

overruled the objection and admitted all the child's interviews into evidence.

In a 2016 recorded interview with Police Detective Ortega, B., who was eight years old at that time, said she played hide and seek with Julian. He told her to sit on his lap and then put his "fingers up [her] pants."

In her first recorded CAIT interview, B. said Julian picked her up and went behind her father's truck. He stuck his "fingers up [her] pants" and "just felt around" inside her "underwear." In a second incident near the truck, he repeated this conduct. In another incident, she and Julian were playing hide and seek. They hid behind a tree. Julian told her to sit on his lap. She complied. He "felt around" inside her "underwear."

In a second recorded CAIT interview in 2016, B said Julian touched her "private area" with "his fingers." He put her on his lap when they were in a bed. She said he went "a little tiny bit up" and "inside of me" and it felt "painful."

B.'s third recorded CAIT interview occurred in 2018. She said she had remembered "different things" while talking to her mother. Julian asked her to sit on his lap when they were playing hide and seek near a tree when she was seven. He put his hand in her "private area" and it hurt. When she was eight, they were laying down in bed in the RV. He put his finger in her private area.

At trial, B. testified she told the truth when interviewed by police and the CAIT interviewer. When she and Julian were near a truck, he "stuck his hand in [her] pants." His hand went under her underwear and he touched her vagina. In a second incident near the truck, he went under her underwear and touched her "butt." She could not remember Julian committing any lewd act

3

by a tree. As to Julian's sexual conduct in the RV, the People introduced CAIT interviews 1, 2, and 3. B. testified "there were two incidents in the RV."

Julian denied B.'s claims. He testified he did not put his hands in B.'s pants or inside her underwear, and he did not put his finger in her vagina. B. never sat on his lap.

DISCUSSION

*Admitting CAIT Interview 3*

Julian contends the trial court erred by admitting the child's statements in CAIT interview 3 "because the circumstances did not provide sufficient indicia of reliability." (Boldface omitted.) We disagree.

Before admitting an out-of-court statement by a child victim under the age of 12 "describing any act of child abuse," the trial court must find "that the time, content, and circumstances of the statement provide sufficient indicia of reliability." (Evid. Code, § 1360, subd. (a)(2).) Factors involving the reliability include: (1) "spontaneity and consistent repetition"; (2) "the mental state of the declarant"; (3) "use of terminology unexpected of a child of a similar age"; and (4) "lack of a motive to fabricate." (*In re Cindy L.* (1997) 17 Cal.4th 15, 30.) "[T]he child's ability to understand the duty to tell the truth" is relevant. (*Ibid.*; *People v. Brodit* (1998) 61 Cal.App.4th 1312, 1330.) Factors supporting reliability include the lack of evidence that the statements were a product of prompting or suggestive questioning. (*People v. Roberto V.* (2001) 93 Cal.App.4th 1350, 1375.) Children may have conflicting memories of collateral details, but the critical factor is whether the child's "general outline of abuse . . . remained constant." (*People v. Eccleston* (2001) 89 Cal.App.4th 436, 446.)

In the 2018 third CAIT interview, B. said she knew she had "to tell the truth." She knew the reason for this interview was because she "remembered" some "different things" while talking to her mother. The interviewer asked, "Did anybody tell you what to say to me today?" B. responded, "No." B. said when she was seven years old, Julian asked her to sit on his lap when they were playing hide and seek near a tree. The interviewer asked, "What happened?" B. said Julian "put his hands" in "my private area" and "it hurt[]." Julian stuck his hand "in [her] underwear." B. said another incident occurred when she was eight years old in the RV. The interviewer asked, "What was he doing?" B. said he "was putting his finger in [her] private area."

Reliability of the child's statements was shown because B. knew the "duty to tell the truth." (*In re Cindy L.*, *supra*, 17 Cal.4th at p. 30.) The interviewer did not suggest the answers to the questions. (*People v. Roberto V.*, *supra*, 93 Cal.App.4th at p. 1375.) There was no evidence B. had a motive to lie. (*Cindy L.*, at p. 30.) B. used the type of "terminology" that would be expected of a child of young age. (*Ibid.*) There was no showing of any mental state that would prevent her from telling the truth. (*Ibid.*)

B. said she remembered events when talking with her mother. Julian notes the third CAIT interview took place in 2018, but the first two CAIT interviews occurred in 2016. He claims B.'s recent memory of these older incidents was not fresh in her mind, and she was influenced by her mother. But in the third CAIT interview, B. said no one told her what to say to the interviewer. She had no trouble describing his lewd acts. B.'s trial testimony shows her mother had not influenced her. B. testified she told the truth and her mother did not tell her what

5

to say to police in that interview or in "other proceedings."  She had some difficulty remembering some collateral details.  But her "general outline of abuse . . . remained constant" in all three CAIT interviews.  (*People v. Eccleston*, *supra*, 89 Cal.App.4th at p. 446.)  She described Julian's pattern for his sexual attacks, and this "consistent repetition" bolstered the reliability of her statements.  (*In re Cindy L.*, *supra*, 17 Cal.4th at p. 30.)  The trial court did not err by admitting all the interviews.

*Ineffective Assistance of Counsel*

Julian contends his trial counsel was ineffective because he did not object to "all of [B's] interviews rather than just the third CAIT interview."  He claims all the interviews lacked sufficient reliability to be admitted.  We disagree.

To establish ineffective assistance of counsel, 1) the attorney's performance must fall below the objective standards of reasonable representation by competent counsel, and 2) counsel's actions must result in prejudice.  (*Strickland v. Washington* (1984) 466 U.S. 668, 688, 694 [80 L.Ed.2d 674, 693, 697-698]; *In re Marquez* (1992) 1 Cal.4th 584, 603.)  There is a " ' " ' "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." ' " ' "  (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 86.)  Consequently, the appellant must meet a strong burden to prevail on this claim.  (*Ibid.*)

Here Julian has failed to provide a complete and adequate record to raise an ineffective assistance of counsel claim.  (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 267.)  The record does not contain counsel's explanations for his decisions, his strategy, or decision-making process.  Julian claims his trial counsel did not object because of "ignorance or mistake."  But this is speculation based on an incomplete record, and speculation does not suffice.

6

(*Id.* at pp. 266-267.)  Yet even on the record we have, Julian has not shown that his counsel lacked legitimate reasons to support his decisions.

" 'The choice of when to object is inherently a matter of trial tactics not ordinarily reviewable on appeal.' "  (*People v. Riel* (2000) 22 Cal.4th 1153, 1197.)  Here not objecting did not constitute ineffective assistance because an objection would not be successful as the child's interviews had a sufficient indicia of reliability.  (*People v. Bradley* (2012) 208 Cal.App.4th 64, 90.) "Failure to raise a meritless objection is not ineffective assistance of counsel."  (*Ibid.*)

Julian notes that during cross-examination of the child in his first trial, his former counsel obtained "admissions" that the child told "lies."  He claims his current trial counsel should have objected to all the child's interviews by citing that prior testimony and should have adopted the cross-examination technique used in the first trial.

That Julian's current trial counsel did not agree with the child cross-examination technique used in the first trial does not show ineffective assistance.  (*People v. Jennings* (1991) 53 Cal.3d 334, 379; see also *People v. Cleveland* (2004) 32 Cal.4th 704, 746.) His current counsel could have concluded that the child's statements about "lies" in response to cross-examination in the first trial were not actual admissions that she had lied.  They were the result of a tricky child cross-examination technique that the child did not understand.

As the People note, in the first trial, defense counsel asked about details the child gave in interviews.  But instead of asking whether her details were correct or incorrect, counsel gave the child *only the binary choice* of whether they were the "truth" or "a

lie." The child did not understand that there was more than a "truth or lie" answer to these questions. As the People note, on redirect, the prosecutor in the first trial was able to rehabilitate the child's credibility by showing the child was not admitting that she lied, she was only agreeing with counsel that the particular statements were incorrect. Counsel could have reasonably decided that because her statements were the result of a misunderstanding, they did not impeach her credibility. Moreover, counsel could have concluded that trying to convince jurors that the child lied based on the type of examination questions she faced in the first trial would backfire. It could cause jurors to be angry with the defense for attempting to impeach the child on a ground that jurors would view to be patently meritless.

### Substantial Evidence

Julian contends there was insufficient evidence to support a conviction on both count 4 (lewd act with a child in the RV) and count 5 (sexual penetration of a child in the RV). He claims there was no evidence that there were two separate crimes committed in the RV. We disagree.

In deciding the sufficiency of the evidence, we draw all reasonable inferences in support of the judgment. We do not weigh the evidence, decide credibility, or resolve evidentiary conflicts. (*People v. Lindberg* (2008) 45 Cal.4th 1, 27; *People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)

In CAIT interviews 1 and 2, B. described the crime where she and Julian were sitting on a bed in the RV. Julian told her to sit on his lap. While in that position, Julian put his hand in her pants. He went "inside" her private area and it was painful. This formed the basis for the conviction on count 5.

8

In CAIT interview 3, B. described a different crime in the RV. She said she and Julian were both "laying down on the bed in the RV." "We were both facing up and he had his head . . . looking at me." While in that position, he put his fingers on her private area. This separate crime formed the basis for the conviction on count 4.

The crimes and the method of committing them were different. One was committed when the child was in an upright position on his lap, the other when Julian and the child were laying horizontally on the bed.

Julian claims there was evidence suggesting there was only one crime in the RV. But the issue is not whether some evidence supports appellant, it is whether substantial evidence supports the judgment. He claims B.'s trial testimony was conflicting. B. was asked how many times "this happen[ed] inside the RV." She responded, "I think like once or twice." Later she testified there were "*two incidents in the RV*." (Italics added.) We do not resolve conflicts in the evidence; that is a matter decided by the trier of fact. (*People v. Ochoa*, *supra*, 6 Cal.4th at p. 1206.) Jurors could have reasonably concluded that her inconclusive response was replaced by her affirmative testimony that there were two incidents. They could reasonably reject one portion of her testimony and find the other to be credible. We do not reweigh the evidence or make credibility determinations. (*Ibid.*)

*Unanimity Instruction on Count 5*

Julian contends the trial court erred "by failing to give a unanimity instruction requiring that jurors agree two acts were committed in the [RV] in order to convict on Count 5" involving sexual penetration.

9

The People respond that because there was only testimony about one act of sexual penetration on count 5, there was no need for a unanimity instruction. We agree.

"In a criminal case, a jury verdict must be unanimous." (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.) When the evidence shows the defendant committed more than one crime for a particular count, a unanimity instruction is required. (*Ibid.*) This instruction prevents the problem of some jurors believing the defendant committed one crime, "while other jurors believed him guilty of the other, resulting in no unanimous verdict that he was guilty of any [crime]" for that count. (*Ibid.*)

In Julian's first trial, the trial court gave a unanimity instruction on count 5. In the second trial, the court decided to give the same unanimity instruction for count 5 as follows: "The People have presented evidence of more than one act to prove that the defendant committed this offense. You must not find the defendant guilty unless you all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act he committed."

In the first trial, the trial court properly gave a unanimity instruction because the child testified about two acts of sexual penetration. But in the retrial, the child only testified to one act of sexual penetration–that Julian penetrated her vagina. Consequently, the court erred by giving a unanimity instruction. (*People v. Coryell* (2003) 110 Cal.App.4th 1299, 1307.)

Julian contends giving the instruction is reversible error because the trial court provided jurors with "an invalid legal theory." The People respond that the court only gave the jury a *factually* inadequate summary–"a kind the jury was 'fully

10

equipped to detect,' " and this does not constitute reversible error. We agree.

In *People v. Aledamat* (2019) 8 Cal.5th 1, 7, our Supreme Court distinguished between an instruction that involves a *legally* inadequate theory and one that involves a *factually* inadequate one. A "*legally* inadequate theory" is one where the theory "is incorrect because it is contrary to law." (*Ibid*.) But a "*factually* inadequate theory" involves one where the evidence does not support the theory. (*Ibid*.) " '[I]f the inadequacy of proof is purely factual, a kind the jury is fully equipped to detect, reversal is not required whenever a valid ground for the verdict remains . . . .' " (*Ibid*.) That is the case here. The trial evidence in this case conclusively showed that there was only one act; therefore, Julian's claim has no merit.

*Unanimity Instruction for Count 3*

Julian contends the trial court erred by not giving a unanimity instruction for count 3 involving the lewd acts by the tree. He claims the child described two lewd acts by the tree in her CAIT interviews and the conviction must be reversed. We agree.

In CAIT interview 1, B. said when she was *eight* years old, she was playing hide and seek. They hid behind a tree. Julian told her to sit on his lap. She complied. Then Julian committed a lewd act.

In CAIT interview 3, B. said she remembered "different things." She said when she was *seven* years old, they were playing hide and seek. Julian asked her if she wanted to sit on his lap. She said yes. She was sitting on tree leaves. She said that "pokey leaves were poking [her]." She sat on his lap and Julian committed a lewd act.

11

These incidents occurred at different times, one when she was eight years old and one when she was seven. One involved Julian telling her to sit on his lap, the other involved the child deciding to sit on his lap because the "pokey leaves were poking [her]." As Julian notes, the CAIT interviewer in the third CAIT interview appeared to conclude the child was describing a different incident by the tree than the one in the first CAIT interview, and jurors could have reached the same conclusion.

The child's trial testimony did not provide clarity. B. said she may have been eight years old in the incident described in the third CAIT interview. She could not remember Julian committing *any lewd act by a tree*.

In closing argument, the prosecutor referred the jury to B.'s first CAIT interview. But, as Julian notes, he did not tell them "they could not rely on her third CAIT interview or that they had to unanimously agree on an act." (*People v. Melhado* (1998) 60 Cal.App.4th 1529, 1536.)

Count 3 involved a lewd act committed near a tree, but jurors reviewing the first and third CAIT interviews could find there were two lewd acts. Some jurors could have relied on the incident described in the first CAIT interview, others on the incident in the third interview, "resulting in no unanimous verdict that he was guilty of any [crime]" in count 3. (*People v. Russo*, *supra*, 25 Cal.4th at p. 1132.)

*The Abstract of Judgment*

At sentencing, the trial court found Julian was entitled to 2,037 days of presentence custody credits. The abstract of judgment lists his presentence custody credits to be 2,022 days. The abstract of judgment must be corrected.

12

## DISPOSITION

The conviction on count 3 is reversed. The sentence previously imposed is vacated. A new sentencing hearing as to the remaining counts is ordered.

The trial court is directed to correct the abstract of judgment to reflect 2,037 days of presentence custody credits and transmit a copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P. J.

We concur:


YEGAN, J.


CODY, J.[*]

---

[*]Judge of the Ventura Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California constitution.

13

Jacquelyn H. Duffy, Judge

Superior Court County of San Luis Obispo

_____

David Andreasen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Gary A. Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.